WESTERN ASSURANCE COMPANY OF TORONTO, CANADA, v. V. KEMENDO.

No. 960. Decided February 7, 1901.

No. 961.    NORTH BRITISH MERCANTILE INSURANCE COMPANY v. V. KEMENDO.

No. 962.   THURINGIA INSURANCE COMPANY OF ERFURT, GERMANY, v. V. KEMENDO.

No. 963.   ROYAL INSURANCE COMPANY OF LIVERPOOL, ENGLAND, v. V. KEMENDO.

1. **Insurance—Iron Safe Clause—Production of Inventory.**
The undertaking of insured to keep the inventory of his stock in a fire-proof safe and produce it to the insurer in case of fire, etc. (the iron safe clause) is binding upon him, but only a substantial compliance therewith is required. (P. 371.)

2. **Same—Failure to Produce—Materiality—Changes in Stock.**
The inventory furnishes the basis for ascertaining from the books the stock on hand at any future time; and where it is not produced nor anything furnished from which the information given by it could be ascertained with reasonable certainty the undertaking is not substantially met; nor is the failure excused by the fact that owing to rapid changes in the stock the same articles would not be on hand for any considerable time. (P. 372.)

3. **Inventory—Excusing Failure to Produce.**
Production of the inventory would be excused where it was lost or destroyed without fault or negligence of insured; but his failure to produce it threw on him the burden of excusing such failure; and this was not met by showing that it was ordinarily kept in the safe, but presumptively left out and destroyed on the occasion of the fire by inadvertence of some employe; insured would be liable for such negligence of his servant. (Pp. 373-375.)

ERROR to the Court of Civil Appeals for the Third District, in an appeal from McLennan County.

Kemendo sued the assurance company and defendant had judgment. Plaintiff appealed and the judgment was reversed and remanded. Ap-

pellee thereupon procured writ of error on the ground of conflict with previous rulings.

*Alexander & Thompson* and *Finley, Harris, Etheridge & Knight,* for plaintiff in error.—The provisions of the policy called the "iron safe clause," being free from ambiguity, and no doubt existing as to its meaning, are warranties: (1) That the assured would take an itemized inventory of stock on hand. (2) Should keep a record of all business transacted, including all purchases, sales and shipments, from the last two inventories. (3) Would preserve these two last inventories and record of business transacted, by keeping them in an iron safe, when the store was not open for business, or remove them from the store to some secure place; and after the fire would produce to the insurer the said last inventory and the said last preceding inventory, and the said record of the business. And each are co-ordinate conditions, and failure to comply with either will prevent recovery. On construction of iron safe clause generally: Kelly-Goodfellow Co. v. Insurance Co., 28 S. W. Rep., 1027; Insurance Co. v. Bank, 30 S. W. Rep., 384; Insurance Co. v. Waters, 30 S. W. Rep., 576; Home v. Cary, 31 S. W. Rep., 321; Northwestern v. Mize, 34 S. W. Rep., 670; Beville v. Merchants, 46 S. W. Rep., 914; Sun Mutual v. Tufts, 50 S. W. Rep., 180; Goldman v. North British and Mercantile, 19 So. Rep., 132; Landman v. Insurance Co., 18 I. L. J., 813, same case, 19 I. L. J., 574; Georgia Home v. Allen, 24 So. Rep., 399; Southern v. Parker, 32 S. W. Rep., 507. On the failure to produce the inventory: Insurance Co. v. Center, 33 S. W. Rep., 554; Alered v. Hartford, 37 S. W. Rep., 95; Drugstore v. Scottish, 44 S. W. Rep., 21; Roberts v. Sun Mutual, 35 S. W. Rep., 955; Home v. Bank, 15 So. Rep., 932

The court erred in its opinion rendered in holding that the inventory of 1898, taken by Kemendo, would, as a matter of law, if produced and furnished as required by the policy, have been useless in ascertaining and determining the amount of appellant's loss by fire under the policy sued on, when said stock, as found by the court, was one changing from day to day and from month to month, by purchases and sales, and it would be impossible to ascertain or arrive at the amount of stock on hand at the time of the fire, except by the use of an inventory, in connection with the purchases subsequently made and the sales subsequently made; and when, if said inventory had been taken as required by the policy, and been produced as required by the policy, by adding thereto the purchases subsequently made and deducting therefrom the sales subsequently made, less the profit earned on the same, the amount of the loss could be ascertained accurately. Insurance Co. v. Center, 33 S. W. Rep., 554; Alered v. Hartford, 37 S. W. Rep., 95; Drug Store v. Scottish, 44 S. W. Rep., 21; Roberts v. Sun Mutual, 35 S. W. Rep., 955; Home v. Bank, 15 So. Rep., 932.

The court erred in holding that if the inventories contracted to be furnished under the policy were left out of the safe by inadvertence, and thus destroyed by fire and not produced after the fire, that the

iron safe clause would not be breached as a matter of law, and the policy would not be avoided. Insurance Co. v. Blum, 76 Texas, 653; Wilson v. Aetna, 33 S. W. Rep., 1085; Aetna v. Holcomb, 89 Texas, 404; Hartford v. Clayton, 43 S. W. Rep., 910; Insurance Co. v. Hutchins, 53 Texas, 61; Insurance Co. v. Long, 51 Texas, 89; Insurance Co. v. Kempner, 87 Texas, 229.

*Clark & Bolinger*, for defendant in error.—The provision in an insurance policy as to preservation by the assured of his books, invoices, and inventory, is not a warranty, because it is not a statement made by the assured; neither is it a condition precedent, because the contract takes effect between the parties upon payment of the premium by the assured and delivery of the policies by the insurer. While it is promissory, it is not a "promissory covenant," as it is sometimes loosely designated, because the assured executes no agreement amounting to a covenant; especially in this case, where there was no written application made by the assured when the policy issued. It, therefore, must come under the category of a condition subsequent, devolving upon the assured only a substantial and not a literal compliance; and in case of loss of an inventory or of some of the books or papers, if the assured produces sufficient data to enable the insurer, with reasonable certainty, to arrive at the amount of his loss, which is the true intent and meaning of the contract, then the issue becomes one of fact, and a court is not authorized to determine such issue as a question of law.

The assured in this case having produced in court all his books and papers, and having demonstrated his loss therefrom, without contradiction, after an exhaustive cross-examination, and having shown that his stock was changing practically every month, the inventory, even if produced, could not have proved of any practical benefit to the insurer, as the loss occurred eight months after the inventory was taken. The court should therefore have taken a verdict upon proper issues, and erred in adjudging a forfeiture as matter of law. Assurance Co. v. Manufacturing Co., 92 Texas, 297; Brown v. Insurance Co., 89 Texas, 594, 595; Insurance Co. v. Pearlstone, 45 S. W. Rep., 832; Insurance Co. v. Harris, 25 S. W. Rep., 720; Insurance Co. v. Kearney, 46 S. W. Rep., 415; McNutt v. Insurance Co., 45 S. W. Rep., 61; Assurance Co. v. Redding, 68 Fed. Rep., 708; Insurance Co. v. Floyd, 49 S. W. Rep., 543; Insurance Co. v. Angel, 38 S. W. Rep., 1067; 3 Joyce on Ins., sec. 1947; Insurance Co. v. Padgitt, 42 S. W. Rep., 800; Insurance Co. v. Dole, 20 Ind. App., 333; Bassell v. Insurance Co., 2 Hughes, 531.

The iron safe clause having expressly permitted plaintiff, the assured, to keep his books and inventories out of his safe during business hours, and the assured having shown, without contradiction, that he exercised that degree of care for the preservation of the inventories which a person of ordinary prudence would have exercised under similar circumstances, and having further shown that the loss of the inventories could only have been caused by the negligence of some one

of his employes, such negligence of an employe can not be visited upon the employer, even in cases of absolute warranty. Negligence in preserving the inventory must be the negligence of the assured, and not that of an employe, to work a forfeiture. 3 Joyce on Ins., secs. 2840-2843, 2215; Hosford v. Insurance Co., 127 U. S., 399; Insurance Co. v. McDowell, 50 Ill., 120; Henderson v. Insurance Co., 10 Rob. (La.), 164; Insurance Co. v. Lawrence, 10 Pet., 517; Insurance Co. v. Douglas, 58 Pa. St., 419; Mickey v. Insurance Co., 35 Iowa, 174; Gates v. Insurance Co., 1 Selden (N. Y.), 469.

BROWN, Associate Justice.—On the 24th day of February, 1898, the Western Assurance Company issued and delivered to defendant in error two policies of insurance, one for the sum of $3000 and the other for $2000, by which it insured him against loss by fire for one year on a stock of "staple and fancy groceries, produce, wood and willowware, cigars, tobacco, confectioneries, and candies," subject to the iron safe clause, which was attached to the policy and is in this language: "1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of the policy, one shall be taken in detail within thirty days of the issuance of the policy, or this policy shall be null and void from such date.

"2. The assured will keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from the date of inventory as provided for in the first section of this clause, and also from date of last inventory, if such has been taken, and during the continuance of this policy.

"3. The assured will keep such books and inventory and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or failing in this, the assured will keep such books and inventories in some secure place, not exposed to fire which would destroy such building; and unless such books and inventories are produced and delivered to this company for examination after loss or damage by fire to the personal property insured hereunder, this policy shall be null and void, and no suit or action shall be maintained thereon. It is further agreed that the receipt of such books and inventories and the examination of the same shall not be an admission of any liability under the policy nor a waiver of any defense to the same."

Kemendo paid the premiums when the policies were delivered. An itemized inventory of his stock had been made in January, 1898, and a set of books was kept, according to the terms of the iron safe clause. On the night of August 22, 1898, the stock of groceries, etc., was destroyed by fire, excepting $865 worth of the stock. The value of the goods destroyed was $15,962.66.

We copy the following from the conclusions of fact found by the

Court of Civil Appeals: "All of the kept books were not actually in the safe on the night of the fire, but whether those left out were necessary to get a complete understanding of the stock purchased and sold is not conclusively shown. It seems that the data furnished by the books and invoices in evidence disclosed the amount of the stock purchased and sold, so that the goods destroyed by the fire could be ascertained therefrom with reasonable certainty. * * * There was testimony tending to show that the stock of Kemendo underwent rapid changes, the sales each month and the purchases of new supplies producing that result, so that the inventory taken in January, 1898, would not represent the stock on hand at the time of the fire in quantity or in kind."

Some of the books and the inventory taken in January, 1898, were not in the iron safe at the time of the fire and were destroyed by the fire which destroyed the stock of goods. When the adjuster of the plaintiff in error came to make settlement, he demanded the inventory which had been previously taken, and it not being produced, he refused to go into the adjustment. Suit was brought to recover the amount of the two policies, and upon the trial below the judge instructed the jury to find a verdict for the defendant, which was done, and judgment entered accordingly. The Court of Civil Appeals reversed the judgment of the District Court and remanded the cause. This writ of error was granted because the ruling of the Court of Civil Appeals is in conflict with the ruling of the Court of Civil Appeals of the Fifth District in the case of Roberts, Willis & Taylor Co. v. Insurance Company, 48 Southwestern Reporter, 559, and in conflict with the ruling of this court in that case in refusing an application for writ of error therein.

There is no controversy as to the validity of the iron safe clause which was attached to and made a part of the policy, nor is there any question made that the assured failed to produce the itemized inventory required by that clause of the policy. The property having been destroyed by fire and the assured failing to produce the inventory provided for by the terms of the policy, the insurance company declined to adjust the claim on the ground that the contract was forfeited, but it is claimed by the assured that the requirements of the contract were substantially complied with. In the case of Brown v. Insurance Company, 89 Texas, 594, this court upon careful consideration held that insurance contracts are governed by the same rules as contracts between individuals, and that only substantial compliance with the requirements of the iron safe clause was necessary to entitle the assured to the benefits of the policy, and upon further consideration of the question we are satisfied that our conclusion reached in that case correctly expresses the law.

The terms of this policy are in no sense ambiguous or uncertain, but distinctly and clearly provide for the taking, preserving, and producing of an itemized inventory of the stock insured within the time specified in the contract, and that in case such inventory has not been

taken, or not having been preserved as prescribed in the policy, shall not be produced in case of loss by fire, the policy shall be forfeited and no right of action shall accrue to the assured. An itemized inventory is one that specifies the different articles composing the stock insured, and if that which has been offered as a substantial compliance with this requirement does not furnish the means of ascertaining the same facts that an inventory would, then it can not be held to be a substantial compliance with the contract. The object of having the inventory made was not to ascertain the gross value of the property insured, but to ascertain the different articles which went to make up the stock in order that the insurance company might test the correctness of the claim in two respects,—(1) whether the articles of which the stock was composed all belonged to the classes of property covered by the policy, and (2) whether the valuation attached to the different items and which went to make up the total sum expressed, was reasonable. The failure to produce an inventory or that which is equivalent in these particulars could not be held to be a substantial compliance with the requirements of the policy. Roberts, Willis & Taylor Co. v. Insurance Co., 19 Texas .Civ. App., 338. If the assured had furnished anything from which the information contracted for could be with reasonable certainty ascertained, then the question of substantial compliance would be before the court, but when there is no compliance whatever there can be no question of a substantial compliance with such requirements.

It was urged by counsel for the defendant in error that the character of the property insured and of the business carried on was such that the same articles would not be in stock for any considerable time, and that therefore the inventory would be of no benefit in determining what property was destroyed or its value. In all cases where property is insured and exposed to daily sale, as stocks of merchandise are, the same result follows in a greater or less degree. It is not expected that the same property which is in stock when the insurance is effected will be on hand at the time the fire may occur in the future, but the stock then on hand furnishes a basis for ascertaining the value from the books at all future times. When the property has been destroyed the insurance company must settle according to its book value, and if the books are started from a wrong basis the result must necessarily be affected by the error in the starting point. For example, if the total sum of the inventory contained the value of property not included in the contract or of the overvaluation of property, this fault would be in the value estimated at the fire from the books, but could not be detected. Not intending to intimate that plaintiff's contention is sound, if true, it can not prevail in this case for the reason that there is in the evidence no means by which the insurance company can determine the correctness of the valuation placed upon the stock at the time the inventory was taken in January, 1898.

The case of Insurance Company v. Kearney & Wyse, lately decided by the Supreme Court of the United States, has been called to our at-

tention, and upon a careful consideration of it we find nothing antagonistic to the views that we have before expressed. In effect that court holds that the iron safe clause is subject to the same rules of construction as other contracts and that a substantial compliance with its terms is all that can be demanded. That rule was announced by this court in Brown v. Insurance Company, 89 Texas, 590.

We have heretofore considered the question of a substantial compliance with the contract as applicable to the undertaking to furnish the itemized inventory, but there is another phase of the case in which the same doctrine is invoked and to which we think it is applicable. The agreement was to keep the inventory in a fire proof iron safe; a literal construction would require that it be kept in the safe all the time except when in use and be produced in spite of any and all contingencies. The true doctrine upon that question is expressed in the case of Insurance Company v. Kearney & Wyse in the following language: "We are of opinion that the failure to produce the books and inventory referred to in the policy means a failure to produce them if they are in existence when called for, or if they have been lost or destroyed by the fault, negligence, or design of the insured. Under any other interpretation of the policies the insured could not recover if the books and inventory had been stolen or if (they) had been destroyed in some other manner than by fire, although they had been placed in some secure place not exposed to a fire that would reach the store." Applying the rule to this case, if the inventory was not produced because it was lost or destroyed by some means not constituting fault, negligence, or design on the part of the insured or his employes, and if the insured used ordinary care to preserve the inventory in accordance with the terms of the contract, then the failure to produce it would not work a forfeiture of the insurance policy.

The failure to produce the policy after the fire, prima facie established a breach of the contract, and it devolved upon Kemendo to prove such facts as, under the above rule, will excuse its nonproduction. The question arises, does the evidence introduced by the plaintiff establish such a state of facts as would support the verdict of a jury in favor of a recovery upon the policy, notwithstanding the nonproduction of the inventory? The rule by which we must be governed is, if the testimony is such that "ordinary minds might differ as to the conclusion to be drawn from it," then the plaintiff had the right to have the case submitted to the jury, and it was error for the court to instruct a verdict for defendant. Lee v. Railway, 89 Texas, 588.

The evidence which bears upon the question is as follows: Ridgell testified: "Those inventories were kept in the safe; I have seen Mr. Kemendo using them to refer to some cost price, or something of that sort, which is the only use I know of their being put to. I have seen these inventories of 1897-1898 in the hands of the employes, but they were kept in the safe and that was their place of deposit; the place I always kept them. I do not know how they came to be out of the safe at the time of the fire, nor did I destroy them, nor did I see Mr. Ke-

mendo take them out and hide or destroy them. The only way that I can account for them being outside of the safe that night is that some one took them out of the safe and left them out, that I did not observe." Again: "I do not remember seeing the invoice of 1898 after completing the footings and handing it to Mr. Kemendo. I saw an inventory in the hands of employes, though what inventory I do not know." V. Kemendo testified upon the same subject as follows: "These inventories were kept in his safe; were kept there all the time except when they were being used in the daytime. The employes had access to the inventories during the day for the purpose of finding out the cost and value of the goods. The only way that witness could account for the fact that the inventory was not in the safe at the time of the fire was that some of the drummers or bookkeeper may have wanted some price and may have left it out by accident, or maybe intended to put it back again and forgot all about it. Witness did not know the inventories were out of the safe on the night of the fire. Had not authorized anybody to take it out of the safe."

Giving the plaintiff in the case the benefit of every fair inference which may be drawn from the testimony, we are of opinion that there could be no reasonable difference upon the conclusion that the loss of the inventory resulted from the failure of some employe of Kemendo, who was authorized to use it, to return it to its place in the safe after it had been used. There is nothing in the evidence to show that such a failure could have resulted from a cause other than negligence, whether it was oversight or simply the failure to perform a duty, but admitting that it was mere forgetfulness on the part of such employe, it is nevertheless negligence. If the person who removed it from the safe, although in the employ of Kemendo, had not been authorized to do so, or if it had been, while in use and out of the safe during the daytime, abstracted by some unknown person or otherwise destroyed without fault of Kemendo or his employes, then it seems to us there might be a reason for submitting the question to the jury as to whether Kemendo had fairly attempted to perform his contract with reference to the preservation of the inventory. It is claimed that negligence or not was a question of fact. That a man of ordinary prudence might be guilty of like negligence would not excuse, but the fact that such man, in the effort to perform his contract, would, under similar circumstances, consciously have done the act in question would show that it was not negligence.

It is claimed by counsel for Kemendo that he is not responsible for the negligence of his employes. To support this proposition a number of authorities are cited, but they all relate to cases in which the fire originated through the negligence of the owner or his servants, and no one of them bears upon the question of negligence in the performance of the contract. We do not think the authorities cited are applicable to the proposition which is submitted to the court to govern this case.

Kemendo having failed to preserve and produce the inventory or

to show that its loss was occasioned without fault or negligence on his part or of his servants, was not entitled to recover against the insurance company, and the court correctly charged the jury to find for the defendant.

The facts of this case show that there may be a very great hardship resulting from this determination between the parties, but it has been said that "hard cases make bad law." It is not the province of the court to adjust the construction and enforcement of a contract to the results which may be produced upon the parties, but it is better that those who make hard contracts shall suffer the result than that the law shall be so warped and distorted as to disturb the business of the country and to render the power of contracting uncertain and unreliable.

The Court of Civil Appeals erred in reversing the judgment of the District Court and rendering judgment for Kemendo, for which error the judgment of the Court of Civil Appeals is reversed and the judgment of the District Court is affirmed.

*Reversed and judgment of District Court affirmed.*

Cases Nos. 961, 962, and 963, involving the same questions and abiding the result in No. 960, met the same disposition in pursuance of the foregoing opinion.

No. 968.  Decided February 7, 1901.

