WESTCHESTER FIRE INS. CO. et al. v. Mc-MINN.  (No. 1813.)

(Court of Civil Appeals of Texas. Texarkana. June 14, 1917. On Motion of Plaintiffs in Error for Rehearing, Oct. 4, 1917.)

1. INSURANCE ⟐➡335(2)—FIRE POLICIES—INVENTORIES—SUBSTANTIAL COMPLIANCE.

Under a fire policy requiring insured to take a complete itemized inventory once each calendar year and within 12 months of the last preceding inventory, and providing that unless such inventory has been taken within 12 months prior to the date of the policy, and together with a set of books showing complete record of business since the taking of the inventory is on hand at the date of the policy, one should be taken within 30 days thereafter or the policy should be void, there was substantial compliance when the insured began business in November, 1913, having a complete inventory, the policy was dated December 2, 1914, and the insured kept the necessary records, testified that not over $25 worth of goods were sold before January 1, 1914, and had begun to take a new inventory a few days before December 25, 1914, which was not completed when the fire occurred in January, 1915.

2. INSURANCE ⟐➡668(4)—FIRE POLICY—STIPULATIONS—COMPLIANCE—QUESTION FOR JURY.

Question whether insured complied with a stipulation of the policy requiring him to keep certain books clearly and plainly presenting a record of the business, held for the jury.

Error from District Court, Franklin County; J. A. Ward, Judge.

Action by M. W. McMinn against the Westchester Fire Insurance Company and others. Judgment for plaintiff, and defendants bring error. Affirmed. On motion for rehearing. Motion overruled.

The suit was by defendant in error against plaintiff in error the Westchester Fire Insur-

ance Company of New York and the Delaware Underwriters of the Westchester Insurance Company of New York. Defendant in error sought a recovery on three policies insuring him, for a period of one year from their respective dates against loss by fire of a stock of general merchandise and certain office furniture and fixtures situated in Mt. Vernon. One of the policies was for $2,800 on the merchandise, and $200 on the furniture and fixtures. It was issued December 2, 1914. Both of the other policies were on the merchandise. One of them, for $500, was issued January 4, 1915. The other, for $1,500, was issued January 8, 1915. The stock of merchandise and furniture and fixtures were destroyed by fire January 17, 1915. The appeal is from a judgment in defendant in error's favor against plaintiffs in error for $5,000, the amount of the policies.

Thompson, Knight, Baker & Harris, of Dallas, for plaintiffs in error. R. T. Wilkinson, of Mt. Vernon, for defendant in error.

WILLSON, C. J. (after stating the facts as above). The policy for $3,000 contained a stipulation as follows:

"The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and within twelve months of the last preceding inventory if such has been taken. Unless such an inventory has been taken within twelve calendar months prior to the date of this policy, and together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of this policy, one shall be taken within thirty days after the date of this policy, or in each and either case this entire policy shall be null and void."

Plaintiff in error insists that it conclusively appeared from the testimony that an inventory of the stock was not taken within 12 months prior to the date of said $3,000 policy, nor within 30 days after its date. It insists it therefore appeared as a matter of law that it was not liable on that policy, and that the court erred when he refused to so instruct the jury. It appeared from the testimony that defendant in error commenced business November 23, 1913, with a stock of goods he purchased a short time before that date, worth about $9,000 according to an invoice or inventory made of same, then verified as correct. He testified that he had engaged in the mercantile business before he so commenced business, and always before had taken an inventory of his stock on January 1st; that he did not take such an inventory January 1, 1914, because he had not sold exceeding $25 worth of goods to that date, so that an inventory taken then would have been, substantially, the same as the one made at the time he commenced business. He further testified that he commenced taking an inventory before December 25, 1914—"a few days" before that date, his clerk testified. The taking of the inventory so commenced was incomplete when the fire occurred January 17, 1915. So far as taken and preserved the inventory showed goods worth $9,667.67 then on hand, which defendant in error testified represented about five-sixths of the stock. Defendant in error further testified that he preserved and then had invoices made by the sellers thereof, covering all goods purchased by him after he commenced business November 23, 1913, to the date of the fire, and that the goods so purchased by him, as they were received and placed with his stock, were checked by the invoices.

[1] It is clear that it appeared from the testimony recited that the stipulation in the policy invoked by plaintiff in error was not literally complied with, in that an inventory of the stock of goods not having been taken within 12 months before the policy was issued, one was not taken within 30 days after it was issued. But whether it was a sufficient basis for a finding that the stipulation had been substantially complied with is another question. We think it was. The inventory or invoice made when defendant in error purchased the stock of goods in November, 1913, was preserved by him and tendered to plaintiff in error after the fire occurred. If the different articles, and the value attached thereto, which went to make up the stock on hand at a given time within 12 months before the date of the issuance of the policy might with reasonable certainty have been ascertained from that inventory (Western Assur. Co. v. Kemendo, 94 Tex. 367, 60 S. W. 661), then it contained the information plaintiff in error contracted for, and, we think, should be held to have been a sufficient compliance with the stipulation. If the testimony of defendant in error that not exceeding $25 worth of stock covered by that inventory was sold before January 1, 1914, was true, then certainly the inventory showed, substantially, all the articles in the stock on January 1, 1914. If it did, then we see no reason why the production of that inventory was not such a compliance with the stipulation as to relieve defendant in error of the forfeiture claimed because he failed to take an inventory of his stock within 30 days after the policy was issued. By the terms of the stipulation, if he had taken an inventory within the 12 months preceding the issuance of the policy, he was not bound to take one within 30 days after it was issued. Having produced an inventory which furnished, substantially, all the information one taken within 12 months before the date of the issuance of the policy would have contained, we think the one furnished should be held to have been a sufficient compliance with his undertaking, notwithstanding it was not taken within the limit of the time specified. Ruffner v. Insurance Co., 59 W. Va. 432, 53 S. E. 943, 115 Am. St. Rep. 924, 8 Ann. Cas. 866; Western Assur. Co. v. Kemendo, 94 Tex. 367, 60 S. W. 661; Dorroh v. Insurance Co., 104 Tex. 199, 135 S. W. 1165. In the Kemendo Case the Supreme

Court said that an issue as to whether the insured has substantially complied with the stipulation in question so as to entitle him to demand the indemnity contracted for arises when he furnishes "anything from which the information contracted for could be with reasonable certainty ascertained."

Each of the policies contained a stipulation as follows:

"The assured will make and prepare, in the regular course of business, from and after the date of this policy, a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and on a credit, or this entire policy shall be null and void. The term 'complete record of business transacted,' as above used, is meant to include in said set of books a complete record of all the property which shall go into the premises and be added to the stock, and of all property taken from the stock, whether by the assured or by others, even though not technically purchased or technically sales."

[2] It is insisted it conclusively appeared from the testimony that defendant in error did not comply with the requirements of the stipulation, and that the trial court therefore erred when he refused to instruct the jury to find in plaintiff in error's favor as to each of the three policies. It was shown that appellee kept a book showing all purchases of goods made by him after he commenced business in November, 1913. It thus appeared that he had complied with the stipulation in so far as it required him to keep books showing all the property added to his stock. It was shown that he kept a "credit sales book," which covered all sales made by him on credit, and a "cash sales book," in which he entered all sums received by him on account of sale of goods. It thus appeared, it seems to us, that defendant in error had complied with the stipulation in so far as it required him to keep books showing all property taken from his stock. It is insisted, however, that it appeared from the testimony that the "cash sales book" was not in fact what it purported to be; that it did not show only cash received on account of sales of merchandise as it purported to, but also showed as cash received on account of such sales sums received on account of sales made on credit, which it did not purport to do. It appeared from the testimony that all sums received by defendant in error on account of goods sold for cash, and all sums received by him on account of goods sold on a credit, as they were received, were placed in his cash drawer. At the end of each day's business the total of the sums received that day on those accounts were entered in the "cash sales book." It seems to us if it was important to plaintiff in error to know what part of the entries in the book represented sales for cash and what next represented sales on credit, it easily could have determined the matter by reference to the "credit sales book." That doubtless would have shown the sums received by defendant in error each day on account of sales on cred-

it, and those sums subtracted from the sums entered in the "cash sales book" on those days would have shown the parts thereof representing sales for cash. After stating that:

"The assured in the case at bar kept a record of his cash sales in this manner: Each morning he left a small amount of change in the cash drawer. All money taken in from cash sales and all payments made on credit sales during the day were also placed in this drawer, and when he needed money he took it out of this same drawer. When goods were taken from the store for the use of himself and family he put a slip of paper in the drawer for the amount of goods used"

—plaintiff in error argues as follows:

"We submit that the testimony of the assured to the effect that at the end of each day he would make a record of cash in the drawer less the amount of the change put there in the morning as the amount of cash sales shows that a complete record of the cash sales and goods taken by the assured was not kept. To illustrate, if the amount of money in the cash drawer at night was $10, that amount would be entered as cash sales, after deducting the amount of change left there in the morning. If during the day he had paid his help $5 in cash or had taken $5 in cash for his own use, the amount of cash sales entered in his book would be $5 short."

It would seem from the illustration in the quotation last made from plaintiff in error's brief, that its contention may be based on a misapprehension of the record. The testimony was undisputed that when defendant in error took money from the drawer for any purpose he put therein a slip showing the amount taken, which was counted as cash at the end of the day's business. It is apparent, therefore, that the entries made in the cash sales book did not incorrectly represent the cash received by defendant in error.

Being of the opinion it appeared from the testimony as a matter of law that defendant in error had sufficiently complied with the stipulation in question, it follows, of course, that we think the trial court did not err when he refused to peremptorily instruct the jury to find in plaintiff in error's favor, nor when he gave to the jury the special charge numbered 3 requested by defendant in error.

We think the issue made by the testimony as to whether the policies for $500 and $1,500, respectively, were canceled by plaintiff in error, defendant in error consenting, before the fire occurred or not, was sufficiently submitted to the jury in the court's main charge, and that it was not error which should cause a reversal of the judgment to refuse to give the special charge numbered 6 on that issue requested by plaintiff in error.

The judgment is affirmed.

### On Motion of Plaintiffs in Error for a Rehearing.

It is asserted in the motion that the statement in the part of the opinion of this court referring to books kept by defendant in error that the testimony showed that when he took money from his cash drawer "for any purpose" he put therein a slip showing the amount taken, which was counted as cash at the end of the day's business, was unau-

thorized by the record. The statement was based on testimony of defendant in error as follows, which we think, fairly construed, authorized it:

"Miss Willie Lou Williams is the only one I had helping me in the store, and she did not work near all the time. I paid her $20 a month. The only record I kept during that time of the groceries used by her for family use was I would treat it as a cash article and give the drawer credit for it. When I would take any goods out of the stock for my family use I would give the cash drawer credit for it; treat it as a cash article, and put a slip of paper in the drawer of the amount of the goods I had used, and then treat it as a cash article that night. The items I have in the cash book for cash sales include the goods I used for family purposes. There is nothing on my books anywhere showing any goods that went to myself for my own use. The young lady who worked for me always paid the cash when she got anything. I probably paid her sometimes by check and sometimes cash. When I paid her money I took it out of the sales for the day. When I took money out of the cash drawer I always counted it for cash. * * * In regard to my personal account, if I bought a sack of flour for my personal use I gave the drawer credit for it and counted it up on the day's sales. I did not have a charge account of my own; it was all in my cash sales. My expense account was paid out of the money outside of the day's sales; it was not paid out of the drawer. Any expense account I had was paid outside of the money that was in the drawer—the money that was counted the day before, in other words."

We think the appeal has been properly disposed of, and therefore overrule the motion.