## HOME INS. CO. et al. v. FLEWELLEN.
### (No. 6154.)

(Court of Civil Appeals of Texas. Austin.
March 3, 1920. Rehearing Denied
April 28, 1920.)

**1. Insurance ⚿335(1)—Provisions as to inventories and books are promissory warranties, and must be substantially complied with.**

Provisions of an insurance policy on a stock of goods requiring insured to take, preserve, and produce inventories and to keep books are promissory warranties, and, unless the law has been changed by statute, a failure to comply with either will render the policy void, but a substantial compliance is sufficient.

**2. Insurance ⚿335(2)—Failure to produce inventory misplaced by bank with which it was left not a breach of warranty.**

Under a provision of an insurance policy requiring insured to take inventories and preserve and produce them after a fire, the failure to produce an inventory which was left at the bank with which insured did business, and was misplaced by it, and could not be found, did not avoid the policy, where a later inventory was produced, and invoices and account sales showing purchases and sales before and after such inventories to the time of the fire were produced.

**3. Insurance ⚿335(3) — Slips on which accounts were kept held to satisfy warranty as to keeping books; "book of account."**

Where insured kept accounts of certain sales on pad slips placed on a spindle and recorded each sale on the cash register, and each day compared the slips with the sales as indicated by the cash register, and added the items on an adding machine, the pad slips, cash register items, and adding machine slips, when pinned together and preserved, satisfied a provision of an insurance policy requiring the keeping of books, though they were not technically "books of account."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Book of Account.]

**4. Insurance ⚿335(3)—Warranty as to books of account satisfied by bound invoice book and check book stubs.**

Where insured kept invoices in a bound invoice book and a record of certain purchases on the stubs of his bound check book, the invoice book and check book constituted a substantial compliance with the provision of the policy requiring the keeping of books of account.

Error from District Court, Bell County; F. M. Spann, Judge.

Action by F. C. Flewellen against the Home Insurance Company and others. From a judgment for plaintiff, defendants bring error. Affirmed.

Thompson, Knight, Baker & Harris and Will Thompson, all of Dallas, for plaintiffs in error.

Winbourn Pearce, of Temple, and A. L. Curtis, of Belton, for defendant in error.

### Findings of Fact.

JENKINS, J. This was a suit upon three policies on the goods of appellee, one issued to Bassel-Flewellen Produce Company September 17, 1917, one to the same parties September 25, 1917, and one to the Flewellen Produce Company March 23, 1918.

The Bassel-Flewellen Produce Company was a firm, composed of————Bassel and appellee. Appellee bought Bassel's interest in the business about October 1, 1917, and continued the business to the time of the fire, July 26, 1918. The Bassel-Flewellen Company began a new business about the last of August, 1917. As soon as their stock was received, which was at the time the first policy was issued, a complete inventory was taken. This inventory was not preserved.

When appellee bought out his partner, the two policies were duly assigned to him, and a second inventory was then taken. This inventory was left by appellee with the bank with which he was doing business, and the same was misplaced by the bank and could not be found, and produced to appellant's adjuster after the fire, nor upon the trial hereof.

Appellee took another complete inventory June 18, 1918, which was produced to appellant's adjuster and upon the trial hereof.

All of the original stock, as well as all additional stock, except a few purchases in Temple to supply the demands of customers, was received in carload lots, and all invoices of same were preserved in a bound invoice book, which was produced to appellant's adjuster and upon the trial.

A record of the purchases made in Temple, such as a few sacks of chops, was kept by appellee on the stubs of his bank book, which showed the amount of the item purchased, when and from whom purchased, and what was paid for the same. These stubs were bound in a check book, and were produced to appellant's adjuster and upon the trial hereof.

A portion of appellee's sales, both before and after he bought out his partner, were made in carload lots. An invoice in duplicate was made of all such sales. One copy was sent to the purchaser, and the other was pasted in appellee's invoice book. Appellee also took bills of lading of all carload shipments, and kept copies of same in his invoice book.

Appellee's account sales, other than those in carload lots, were kept in this manner: When he made a sale, he noted the same on a pad kept on his desk, showing the date of the sale, the goods sold, and the price received for the same. These slips as they were made were torn off of the pad and placed on a spindle. His sales were for cash, except to

some contractors, who bought in large lots, and who called and paid for same on their pay days. Their names were placed on the pads, but the sales were recorded by the cash register when the cash was received. Each cash sale was recorded on the cash register at the time the same was made. At the close of each day's business, the cash sales, as indicated by the cash register, were compared with the pad slips showing such sales, and the items were added on an adding machine. These pad slips, cash register items, and adding machine slips were pinned together at the close of each day's business and placed in appellee's safe. They were all produced to appellant's adjuster and upon the trial hereof.

The invoices, bills of lading, and bank book stubs showed the items and value of the goods received in the business from the beginning, as also from and after the taking of the last inventory, taken June 18, 1918.

The account sales showed the items sold and the amount received for same from the beginning of the business, and also from and after the last inventory. In this way it was ascertained what would have been the amount of loss if the sales had been at cost. This amount exceeded the loss. The evidence showed that all goods were sold at a profit, which, of course, increased the amount of the loss.

### Opinion.

The issues of law raised by the facts of this case, as presented by the assignments of error, are: Did the appellee comply with the warranty clauses of the policies (a) in the matter of taking inventories; (b) in preserving the inventories taken, and producing them after the fire; and (c) in keeping books?

[1] It is well settled that these conditions in a policy are promissory warranties, and, unless the law in this regard has been changed by Vernon's Sayles' Ann. Civ. St. 1914, art. 4874a, a failure to comply with either of them will render the policy void. It is equally well settled that only a substantial compliance is required. What is a substantial compliance must necessarily rest, to some extent, upon the facts of each case.

A. We hold that the facts of this case, as hereinbefore set out, show that the warranty as to taking inventories was complied with. Ins. Co. v. Walker, 210 S. W. 683; Ins. Co. v. Hardin, 151 S. W. 1154; Brown v. Ins. Co., 89 Tex. 590, 35 S. W. 1060.

[2] B. Was the failure to preserve and produce the inventory of October 1, 1917, sufficient, under the facts of this case, to avoid the policies? We think not. In Assurance Co. v. Kemendo, 94 Tex. 373 (61 S. W. 1102), the court said:

"The true doctrine upon that question is expressed in the case of Insurance Co. v. Kearney & Wyse [180 U. S. 132, 21 Sup. Ct. 326, 45 L. Ed. 460] in the following language: 'We are of opinion that the failure to produce the books and inventory referred to in the policy means a failure to produce them if they are in existence when called for, or if they have been lost or destroyed by the fault, negligence, or design of the insured. Under any other interpretation of the polices the insured could not recover if the books and inventory had been stolen or if (they) had been destroyed in some other manner than by fire, although they had been placed in some secure place not exposed to a fire that would reach the store.' Applying the rule to this case, if the inventory was not produced because it was lost or destroyed by some means not constituting fault, negligence, or design on the part of the insured or his employés, and if the insured used ordinary care to preserve the inventory in accordance with the terms of the contract, then the failure to produce it would not work a forfeiture of the insurance policy."

In Ins. Co. v. Biggs, 216 S. W. 274, it was shown that the insured kept the inventory in his safe, but that J. W. Biggs, who, we infer, was the uncle of the insured and one of the former owners of the store, but not an employé of the insured, took the inventory out of the safe, for purposes of his own, without the knowledge or consent of the insured, and failed to put it back, by reason of which it was burned. It was held that the insured's failure to produce the inventory did not render the policy void.

The inventory of October 1, 1917, was left with appellee's bank. This did not violate the warranty clause as to same. The loss of same by the bank shows that the failure to produce it after the fire was through no fault or negligence of appellee, for which reason the failure to produce the same did not render the policies void.

In the instant case the failure to produce the inventory of October 1, 1917, could not have worked any injury to appellant, for the reason that the appellee produced an inventory taken June 18, 1918, and invoices and account sales of all goods purchased or sold from that date to the time of the fire, July 26, 1918. Besides this, he furnished invoices of all goods with which the Bassel-Flewellen Company began business, invoices of all goods subsequently purchased, and account sales of all goods sold, so that there was no difficulty in arriving at the amount of the loss, to aid in which was the purpose in requiring inventories to be taken and kept.

C. Did the appellee substantially comply with the second warranty clause in reference to keeping his books? We have had considerable difficulty in answering this question satisfactorily to ourselves.

[3] Technically speaking, the slips showing the items sold and the price, the cash register slips, and the adding machine slips were not books of account. But when they were all

preserved and produced, as in the instant case, they were more reliable than any set of books would have been for the purpose for which books were required by the policy to be kept, namely, to show, among other things, the amount of goods that had been sold. These slips were the original data from which a bookkeeper would have posted his books, had he done so from day to day. In making such entries in books, there is always some chance of making errors in transcribing from the original sources. If the original memoranda can themselves be produced, this chance of error is eliminated. Of course, there is danger of such memoranda being lost, and hence for the preservation of the data they contain prudence suggests that they be entered in bound books. In the instant case it was shown that none of such memoranda had been lost.

[4] We think that his invoices and the stubs of his bank books are sufficient to show all goods purchased by appellee. It was shown by the evidence that these invoices were kept in a bound book, as were also the stubs of the bank checks. This was a substantial compliance with the provision of the policies. Brown v. Palatine Ins. Co., 89 Tex. 596, 35 S. W. 1060; Ins. Co. v. Padgitt, 42 S. W. 803; Kelley v. Ins. Co., 8 Tex. Civ. App. 227, 28 S. W. 1032; Ins. Co. v. Kemendo, 94 Tex. 373, 61 S. W. 1102; Bank v. Cleland, 36 Tex. Civ. App. 478, 82 S. W. 337; Ins. Co. v. Masterson, 83 S. W. 50.

We hold that appellee's system of bookkeeping was a substantial compliance with the terms of the policy in this regard.

We do not pass upon the issue as to whether article 4874a is applicable to the facts of this case, for the reason that question is now pending on writ of error in the Supreme Court. It has been submitted, and doubtless will be decided by that court in a short time.

For the reasons stated, we think the judgment of the trial court should be affirmed; and it is so ordered.

Affirmed.

---

⨭For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes