**OCEAN ACCIDENT & GUARANTEE CORPORATION, Limited, v. FIRST NAT. BANK OF DICKINSON (SALZMAN, Intervener).**

### No. 10121.

Court of Civil Appeals of Texas. Galveston.

July 3, 1935.

Rehearing Denied July 18, 1935.

Baker, Botts, Andrews & Wharton and Albert P. Jones, all of Houston, for appellant.

James L. McKenna, Geo. P. Prendergast, and McDonald & Wayman, all of Galveston, for appellees.

LANE, Justice.

The Ocean Accident & Guarantee Corporation, Limited, issued to First National Bank of Dickinson, Tex., its certain standard form bank burglary and robbery policy for the sum of $15,000. The policy period was from May 23, 1931, to May 23, 1934. The liability contracted for by the provisions of sections 1 and 2 of the policy is as follows:

"I. To Pay the Assured for loss sustained by the assured or by the owner(s), by burglary of money and securities feloniously abstracted during the day or night, from within that part of any safe or vault to which the insurance under this Paragraph I applies, by any person or persons who shall have made forcible entry therein by the use of tools, explosives, electricity, gas or other chemicals, while such safe or vault is duly closed and locked and located in the Assured's premises specified in the Declarations and hereinafter called the premises, or located elsewhere after removal therefrom by burglars or robbers.

"II. To Pay the assured for loss sustained by the assured or by the owner(s), by robbery of money and securities from within any part of the said premises occupied by the Assured or his officers or employees exclusively."

By section A of the policy the following definitions are made:

" 'Robbery', as used in this Policy, shall mean a felonious and forcible taking of property: (1) by violence inflicted upon the person or persons having the actual care and custody of the property; (2) by putting such person or persons in fear of violence; or (3) by an overt felonious act committed in the presence of such person or persons and of which such person or persons were actually cognizant. 'Money', as used in this Policy, shall mean currency, coin, bank notes (signed or unsigned), bullion, uncancelled United States Postage and revenue stamps in current use, War Savings Certificate stamps not attached to Registered Certificates, and 'Thrift' stamps. 'Securities', as used in this Policy, shall mean all negotiable or non-negotiable instruments, documents or contracts representing money or other property. Personal pronouns used in this Policy to refer to the Assured or owner(s) shall apply regardless of number or gender."

On March 31, 1932, the iron safe of the insured bank was by some person or per-

sons forcibly entered and the money and securities deposited therein, together with certain items of jewelry also deposited therein, were taken and carried away, to a total loss of the bank of such money and securities as were covered by the policy above mentioned. Some of the items of jewelry mentioned had been placed with the insured bank to secure payment of certain several notes executed and delivered to the insured by the several makers thereof. Such notes were in the burglarized safe at the time it was burglarized and were taken and carried off and have never been recovered by the insured.

After the robbery of the bank, the Ocean Accident & Guarantee Corporation, recognizing its liability under the provisions of its policy and the facts stated, to a certain extent paid the bank for the loss of the following items: (1) The currency, coin, and bank notes, all of the value of $6,485.56; (2) certain bonds of the value of $2,948.75. Such corporation also paid to the bank $648.40, same being premium on bonds; $147.50 for repairing the damaged safe; and $83.31 for adjusting premiums on bonds. It refused, however, to pay for any jewelry lost in the robbery, which the bank claimed was in the bank to secure payment of the notes hereinbefore mentioned and of the value of $4,686.48.

First National Bank of Dickinson, Tex., brought this suit against the Ocean Accident & Guarantee Corporation, Limited, upon the policy, and, after first alleging the payment of the several sums as above stated by the defendant corporation, it alleged that the following items of jewelry are covered by the policy, and that at the time of the burglary such jewelry was held either by the bank as collateral for loans or for safekeeping (a tabulated statement showing the names of the parties to whom said items of jewelry belonged and a description of each piece of jewelry and the value thereof as placed by the respective parties owning the same was given, the total value of the whole lot being stated as $8,875):

"Plaintiff further alleged and prayed that it performed all the conditions required of it by the terms of the policy, and in due time after the burglary and more than 40 days before the commencement of this action, demanded payment of the sum insured, which defendant refused to pay, except to the extent above alleged, thereby leaving defendant justly indebted and liable to plaintiff in the sum of $————. In this connection, plaintiff avers that the value of said jewelry is in the aggregate in excess of the balance due on the policy, but that it is entitled to recover the balance due.

"Wherefore, plaintiff prays that defendant be cited to answer this petition, and that it have judgment for the balance of its said loss, with interest, and for such other and further relief, general and special, in law and in equity, to which it may show itself justly entitled."

One Ed Salzman intervened in the suit and alleged that certain specified items of the jewelry lost belonged to him, and prayed that he have judgment against the plaintiff and defendant, jointly and severally, for the sum of the difference between the amount owing by him to the plaintiff by reason of the execution of three notes and the delivery thereof by him to the plaintiff, and the reasonable cost of replacement of the jewelry pledged as security, etc. However, as the trial court rendered judgment that intervener take nothing by his intervention, and no appeal has been taken from such judgment, no further mention of the intervention will be herein made.

The defendant answered by general demurrer, special exceptions, general denial, and specially alleged:

"That said contract of insurance did not provide for payment by defendant for loss by burglary of jewelry or any other properties and moneys or securities as defined in said contract. Under said contract the defendant is not liable for any loss arising from the burglary of those articles named in said plaintiff's petition and consisting of jewelry, and all of said items or articles of jewelry sued for therein are not moneys nor securities as defined in said policy and contract of insurance."

And, further, that the provisions of the policy relative to the keeping of certain records by the assured were not complied with, in that such records were not kept so that the amount of the loss can be accurately determined therefrom by the defendant, "and that the condition of the records of the assured at the time of said loss were not such as would enable or did enable this defendant to determine the amount of the loss accurately therefrom. That by reason thereof this defendant is not responsible or liable therein under said

policy by virtue of the breach of said provision therein."

The case was tried by the court without a jury and judgment was rendered for the plaintiff against the defendant for the sum of $3,366.70, with interest thereon from date of judgment at the rate of 6 per cent. per annum.

From the judgment so rendered against it, the defendant has appealed to this court.

At the request of appellant the court filed findings of fact and conclusions of law, the pertinent parts of which are as follows:

### "Findings of Fact.

"(1) The policy of insurance declared on by plaintiff and introduced in evidence was, in effect, when on the night of March 31, 1932, a person or persons made forcible entry into the safe described in the policy by the use of tools, acetylene gas and other chemicals while the safe was closed and locked, and while located on the premises described in the policy.

"(2) The person or persons guilty of the burglary feloniously abstracted from the safe money and securities, including various items of jewelry. The following tabulation shows the names of the respective owners, a brief description of each piece and the values thereof, to-wit:

| | |
|---|---|
| "(a) Blossman, Mrs. R. G.—1 pair diamond ear screws.. | $ 200.00 |
| "(b) Collins, C. W.—1 diamond ring, .91 Karats ............ | 400.00 |
| "(c) Outterside, A. J.—1 solitaire diamond ring, 1-⅛ karats | 750.00 |
| "(d) Salzman, Ed—1 diamond brooch (25 diamonds) 1 pair diamond cuff-links 1 diamond solitaire scarf pin 1 crescent diamond scarf pin 1 diamond lionshead ring ................. | 2,100.00 |
| "(e) Lobit, Paul—1 dinner ring (large Diamond) ............... | 800.00 |
| 1 dinner ring (Pearls & Diamonds) ........... | 500.00 |
| 1 brooch................... | 1,250.00 |
| 1 bracelet................ | 1,260.00 |

"(3) The jewelry owned by Mrs. Blossman, C. W. Collins, A. J. Outterside and Ed Salzman was held by plaintiff as pledges to secure loans made to these parties respectively. The jewelry belonging to Mrs. Lobit was left with plaintiff for safekeeping.

"(4) Plaintiff's records show the items of jewelry belonging to Mrs. Blossman, Collins, Outterside and Salzman, and were so kept that the loss arising from the taking of these items can be accurately determined. Plaintiff had no record of the Lobit jewelry. * * *

"(6) Plaintiff used due care to prevent the loss of Intervenor's jewelry.

"(7) There was a misstatement in the description of the thickness of the steel in the outer door of the vault, by reason of which defendant is entitled to an increase in the premium in the sum of Eighty-Three and 31/100 ($83.31) Dollars.

### "Conclusions of Law.

"(1) By the terms of the policy, defendant agreed to pay plaintiff for loss by burglary of money and securities. I have concluded that the policy extended to and covered the jewelry held by plaintiff as collateral, but does not extend to the Lobit jewelry of which plaintiff had no record.

"(2) Plaintiff, having used due care to prevent the loss of Intervener's jewelry, is not liable for its loss.

"(3) Plaintiff is entitled to recover from defendant the value of the Blossman, Outterside, Collins, and Salzman Jewelry in the sum of Thirty-Four Hundred and Fifty and 00/100 ($3450.00) Dollars, which should be offset by the increased premium in the sum of Eighty-Three and 31/100 ($83.31) Dollars due to defendant."

Appellant excepted to the second, third, fourth, and fifth findings of fact.

Appellant's propositions Nos. 1 to 4, inclusive, reduced to their ultimate are in effect contentions that the provisions of the policy do not cover the items of jewelry shown to have been carried away by the person or persons who burglarized appellee's safe, which were at such time being held by appellee as pledges to secure payment of certain notes lost in the burglary, executed for borrowed money, although it was shown that the notes represented the obligations of the makers thereof and contained recitals that the jewelry sued for was held as securities for the payment of said notes, and therefore appellee was not entitled to a recovery in this suit, and the court erred in allowing appellee to recover for the value of said jewelry.

We overrule such contentions. Counsel for appellant admits that there is no contention by appellee that the jewelry involved in the suit was included within the definition of money, as set out in the policy. This is unquestionably true, but appellee

does contend that the provisions of the policy indemnifying against loss sustained by burglary of money and securities and providing that "securities as used in this policy shall mean all negotiable or nonnegotiable instruments, documents, or contracts representing money, or other property," does cover loss sustained by burglary of jewelry held by the appellee bank as collateral security for loans.

It is apparent that this appeal concerns only the recovery of the value of the several items of jewelry placed with appellee as a pledge to secure certain notes executed by Mrs. R. G. Blossman, C. W. Collins, A. J. Outterside, and Ed S. Salzman, and it is also apparent that recovery was denied for the jewelry placed with the bank for safe-keeping only.

The things covered by the policy, as shown by the first paragraph thereof, are stated to be "money and securities," and in paragraph A, under the head of definitions, the meaning of the term "securities" is defined as all negotiable or nonnegotiable instruments, documents, or contracts representing money or property (either money or property, or both money and property).

■ We think it clear from the definition of the term "securities" given in the policy, it comprehends all obligations evidenced by written instruments, pledges, mortgages, deposits, and liens given by debtors in order to secure payment of their debts and the performance of their obligations to the insured bank, and we think it was the intention of the parties to the policy contract that the policy should cover the notes held by this bank and the lien given by its debtors, which represented the jewelry pledged, which is property other than money.

■ Appellant invokes the application of the maxim ejusdem generis. Such maxim we think has no application in construing an insurance policy.

The decisions make it plain that when aid is necessary to arrive at the correct construction of the language of an insurance policy, the applicable rules of construction are the opposite of this maxim. The fact that counsel has to resort to such an aid in reaching the conclusion that jewelry held as security is not covered shows rather conclusively that there is doubt and ambiguity in the terms of the policy. This being so, the familiar rules of construction to the effect that the language, having been selected and used by the insurer to express the terms and conditions upon which it issued the

policy, will be strictly construed against it and liberally in favor of the insured; and if the words admit of two constructions, that one will be adopted most favorable to the insured. This is settled by an almost unbroken line of decisions in all of the states. See Brown v. Palatine Ins. Co., 89 Tex. 590, 35 S. W. 1060, 1061; Ocean Accident & Guarantee Corp. v. Northern Texas Traction Co. (Tex. Civ. App.) 224 S. W. 212; 32 C. J. 1152.

■ The subject to which this policy relates is the protection of the bank against loss of securities from burglars, and since there can be no doubt but that diamonds and jewelry are securities as much as documents and contracts for the payment of money, the parties contemplated that they should be covered by the policy, and if they are not covered, a substantial amount of the securities held by the bank were not protected. "Forfeitures are not favored by the law, and if the language used is fairly susceptible of an interpretation which will prevent a forfeiture, it will be so construed." Brown v. Palatine Ins. Co., supra.

■ Since the object and purpose of the policy contract was to indemnify the insured against loss of securities by burglary, it should be construed so as to carry out that intention. It is well settled that in construing a contract the intention of the parties is of primary and controlling importance. The policy must be considered as a whole, viewed in the light of surrounding circumstances, the situation of the parties, and the risks naturally or usually excluded, as well as those included. 32 C. J. 1149. Nothing should be excluded unless it was clearly intended. As a practical proposition, if appellant's contention is upheld, the only liability assumed under the head of securities is for the loss of instruments rendered negotiable, such as bearer bonds, because nonnegotiable instruments could not be enforced in the hands of burglars or any one holding under them. There was no liability for the loss of the bank's notes because none had been indorsed.

The policy in question contains a provision that there shall be no liability for loss unless the insured shall keep records from which the amount of the loss can be accurately determined by the insurance company.

By appellant's fifth, sixth, and seventh propositions, contention is made that the evidence shows that the records of the in-

sured were not such as would permit the insurer to ascertain accurately therefrom the amount of its loss, and therefore appellee was not entitled to a recovery and judgment should have been entered for the insurer as to any item concerning which the records of the insured are so deficient that the amount of loss cannot be accurately determined therefrom.

We are not prepared to hold that the insured failed to keep such records as were contemplated by the parties to the contract, but, to the contrary, we think the evidence shows that such records as contemplated were kept by the insured.

The records kept by the bank describing the jewelry and valuing it consisted of a note register in which a description of each article was given and collateral form notes in which the jewelry was described with particularity and valuations placed on it. Only the note register was produced, as the notes were stolen along with the jewelry. Mr. Jones, cashier of the bank, testified that in the notes themselves he described the jewelry with particularity. In the note register the jewelry put up as collateral might be described as various jewelry, "while the note itself recites in detail what those items were."

The witness Jones testified that one of the items of jewelry was described as one crescent pin, and another as one brooch containing twenty-five diamonds; that he thinks the notes did contain statement of the value of these various pieces of jewelry; that nearly all the time the notes estimated the value of the collateral.

Testifying further, the witness said that after the burglary many, if not all, of the notes were renewed, but that such renewal notes did not contain the description of the jewelry pledged, as did the lost notes.

We think the fair inference from the testimony of the witness Jones is that the lost notes, together with the note register, contained a description of the jewelry and its estimated value; and since the notes were lost without negligence of the bank, the failure to produce them does not avoid the policy or affect the bank's right to establish the value of the jewelry by other evidence. Western Assurance Co. v. Kemendo, 94 Tex. 367, 373, 60 S. W. 661; Home Ins. Co. v. Flewellen (Tex. Civ. App.) 221 S. W. 630.

In support of its contention that it is not required to rely upon extraneous evidence for a description and value of the jewelry, appellant cites and reviews in its brief a number of cases discussing the iron safe or record warranty clause in fire insurance policies on stocks of merchandise and seems to go on the theory that they are precedents in construing and applying the policy in question.

There is a great difference between the two. Fire insurance policies on stocks of merchandise, wares, etc., when daily sales and purchases are made, prescribe in detail the records to be kept and produced as evidence. For example, see Commonwealth Underwriters' Agency v. Lawrence Grocery Co. (Tex. Civ. App.) 244 S. W. 200. There are no such requirements in the policy in question. It would be almost impossible for a bank to strictly comply with the provisions of the policy if given the construction contended for by appellant. The courts have declined, in construing similar provisions in burglary and robbery policies, to give them the effect contended for by appellant. For example, in New Amsterdam Casualty Co. v. Iowa State Bank (C. C. A.) 1 F.(2d) 196, 197, a robbery policy covering cash and securities taken from the counters and cages of the bank presented the question as to how much money and the value of the securities that were taken by the robbers. The policy contained a provision almost identical to the one in question. The company set up as a defense that the books and records of the bank did not accurately show the amount stolen; that extraneous evidence and estimates had to be resorted to. It was insisted there, as appellant does here, that the policy provided for the character of the evidence by which the amount of the loss must be shown, and that since there was only parole evidence estimating the amount of the loss, a verdict should have been directed for the company. The court said:

"We do not understand that, under the terms of the policy no evidence could be offered to show the losses except the books of the bank. Subdivision (c) of No. 2 of Special Agreements in the bond provides: 'When Company Not Liable. * * * If the books and accounts of the assured are not so kept that the loss may be accurately determined therefrom by the company.'

"It seems to be the theory of plaintiff in error that under this provision it was the duty of the bank to keep books from which the exact loss might at any time be ascertained.

If this is what the policy means, it would be necessary at every moment of the day to figure out the amount of money and securities on the counters and in the cages and preserve it in some bank book, so that, if any robbery occurred, there would be a book record. Evidently in practical banking this would be well-nigh impossible. Such a construction of this provision would make practically impossible any recovery for a loss under the policy. Certainly this was not the intention of either party to the contract. The policy does not require any particular kind of books to be kept, and it does not appear that it was customary for banks to keep books which would show the amount of money and securities on hand at any particular moment. No strained or impracticable construction should be indulged in as to this provision. All that is required is a substantial compliance therewith. From the record it appears that the usual bank books were kept, including what was known as a teller's book, and these books did show in a general way the amount of money and securities in the bank." See, also, 9 C. J. 1098; Goudie v. National Surety Co. (Mo. App.) 288 S. W. 369.

The trial court awarded to appellee a recovery of $3,366.70 as the value of the jewelry owned by Mrs. Blossman, C. W. Collins, A. J. Outterside, and Ed Salzman, which appellee held as pledges to secure several notes held by it. Such award included an item of $200 as the value of a pair of diamond ear screws, the property of Mrs. Blossman.

Appellant by its eighth and ninth propositions contends that the court erred in allowing appellee to recover $200 for said ear screws, in that there was no evidence fixing any value of the ear screws.

After a careful examination of the statement of facts, we have reached the conclusion that appellant's contention should be sustained, and that the judgment rendered should be reduced to the extent of $200, and that the judgment should be here reformed and rendered for appellees for the sum only of $3,166.70, together with interest thereon as awarded by the trial court's judgment.

The judgment is reformed as indicated, and, as so reformed, is affirmed.

Reformed and affirmed.