Mr. Justice "Wheeler
delivered the opinion of the court,. Mr. Justice LipscoMb not sitting.
This case comes before us on appeal; and the charge and rulings of the court, objected to, are presented in the following-exceptions taken at the trial:
1st. The court charged the jury that they would not regard the testimony of John P. Gill in relation to the amount of the debt, except so far as he testified to the sale and delivery of articles of his own knowledge.
• 2d. The court permitted the plaintiff to introduce evidence of a sale of certain slaves, without any averment in his pleadings in regard to such sale.
3d. The court permitted parol testimony of a contract of sale which was evidence by writing, without requiring the plaintiff to account for the nonproduction of the writing; and
4th. Finally it is contended that the court erred in permitting a remittitur of a part of the verdict, and in giving judgment for the residue.
No objection appears to have been taken to the non-production of the original books of entries; but copies- or extracts from them, compared by the witness and found correct, were given in evidence without objection. It cannot, therefore, be now objected that the original entries were not* produced. Hid the judge err, then, in excluding from the jury the entries and testimony of the witness, Gill, except so far as he testified to the actual sale and delivery of specific articles of his own knowledge.
Account boobs containing original entries are not of themselves evidence. Peake’s Ev. 15; 1 Phil. Ev. 266, note 491. They possess no intrinsic force as proof against third persons. Id. 265, note 489. But they may become evidence by the in *173 tervention of extrinsic circumstances. Id.; 8 J. R. 211. Some of tbe circumstances which have been beld sufficient primxa facie to .accredit books of entries are the suppletory oath of the party making them, in case of his death, proof of his hand-writing, proof of delivery of the articles by the clerk, or if he be dead, of his hand-writing;' or if the party had no clerk, proof first of that fact; second, that there had 'been regular dealings between the parties; third, that some of the articles charged were delivered; fourth, that the books produced are the books of account of the party; and fifth, that he keeps fair and correct books.
In several of the states, as Connecticut, Maine, Vermont, New Hampshire, Massachusetts, Pennsylvania, Rhode Island, North Carolina, South Carolina, Delaware, Maryland, Tennessee, Ohio and Illinois, account books containing the original entries are received in evidence when accompanied by the suppletory evidence of the-oath of the party. Id. Cow. & Hill’s notes to vol. 1, note 491. In some of these states this -departure from the English rule of evidence rests on statutes, but in others not, and in some of those whose statutes recognize the practice, the custom is said to have existed long anterior to any statutory recognition. Id. In respect to the -reason and origin of this practice, it has been said by Bernard, J., in Beach v. Mills, 5 Conn. 496-7, that it is “ founded in a kind of moral necessity,” and that “ the principles of it were introduced into this country from Holland by the first settlers of New England.” It was doubtless derived from the civil law. Pothier, part 4, art. 2, sec. 4.'
As to what circumstances or proof, extrinsic of the books of entries, shall authorize their introduction in evidence, there is diversity of practice. But in nearly, if not quite all the states of the Union, the rigor of the English rule which excludes books of account as being the party’s own fabrication, and therefore no evidence for him, has been departed from, as has been said, from .a principle of “moral necessity.” 5 ■Conn. 496-7. There is said to be a class of dealing to which the law has, prima facie, ascribed a destitution of the usual means of proof, and a general concurrence of adjudications *174 has referred to this class the sale and barter of merchandise and other commodities, circumstances of so frequent recurrence and generally so trivial in their individual amounts as not to compensate for the procuring of foi’mal proofs. In relation to these things, it is said, all mankind with few exceptions have fallen into the line of daily and brief memoranda, called accounts, and the strong presumption always is, that entries in that form have been made, and that no other proof exists. Such a presumption, from the general and usual course of business, is a common act of the law. 1 Phil. Ev. p. 266, note 4$1,298. Hence the necessity for that relaxation of the rigor of the common law rules of evidence, which has been recognized in nearly every state in this.Union, if not, as was said in Beach v. Mills, supra, throughout “ the whole civilized and commercial world; ” a relaxation, indeed, which seems not confined to the subject of accounts, but to have been extended to almost every branch of mercantile law. Peake’s Ev. 45, note T.
In the courts of New York and South Carolina (as in many other states) the subject has undergone repeated discussions, and we have referred to decisions of these very learned courts as settling the rules of evidence upon the subject under consideration, upon as rational and safe a basis as perhaps the courts of any country with whose jurisprudence we are acquainted. In the former these accounts are adduced in evidence without and in the latter with the oath of the party. In New York, as with us, the common law rules of evidence were adopted, and when the decisions referred to were made, they had received no other modification in this class of cases than such as had been created by their judicial tribunals, and were grounded on the English decisions. Ye may refer, therefore, to their adjudications upon the question before us, with perhaps more propriety and confidence than to those of states whose laws are not in their origin and principles identical with our own.
The question as to the admissibility and proof of original entries underwent an elaborate discussion in Merrill v. The I. & O. R. R. Co., 16 Wend. 586, where many English and *175 American cases are collected and reviewed by the late learned Justice Cowen. It was there declared to be the rule, that when original entries are produced, and the person who made-them or saw them made by another, knowing them at the time-to be true, testified that he made the entries or saw them made, and that he believes them to be true, although at the time of his testifying he has no recollection of the facts set forth in the entries, such evidence is admissible and prima* facie establishes the facts evidenced by the entries. Id. 595. This seems the .well settled doctrine of that court with this restriction, that the entries must have been made in the usual course of business. 5 Wend. 301.
“A great variety of American cases have arisen,” says Judge Cowen, “where the witness, having made the entry or memorandum, could swear to his belief of its truth, but had entirely forgotten the facts which he recorded, in which the paper thus attested has been received and read in evidence to-a jury.” And he quotes with approbation the opinions of Nott, J., in the State v. Rawls, 2 Nott. & McC. 334, and Bailey, J., in Maugham v. Hubbard, 2 Me. 5, 7, who liken the case to proof of the execution of a deed by a subscribing-witness, whose testimony is received as sufficient proof of its execution, though he may state that he does not recollect the fact of the execution of the deed in his presence, but that seeing-his own signature, he has no doubt that he saw it executed. In the last named case, Maugham v. Hubbard, a witness said from seeing his'original entry he had no doubt he-had received the money. And upon this testimony the entry was received in evidence. In Linnell & Foot v. Sutherland, 11 Wend. 568, which was a suit by a mechanic for work done-in the line of his business, it was decided that after proof of one or two items of the plaintiff’s account, the production of Ms books of account, with proof that he kept honest and fair-books, was competent evidence to be submitted to the jury. In the case of Vasbury v. Thayer, 12 J. R. 461, it was held that when there were regular dealings between the plaintiff and defendant, and it was proved that the plaintiff kept honest and fair books of account; that some of the articles charged *176 had been delivered to the defendant, and that the plaintiff kept no clerk, his books of account were, under the circumstances, and from the necessity of the case, admissible for the •consideration of the jury.
In the case of The State v. Rawls, 2 Nott. & McC. 334, this subject was considered, and the rule in Phil. Ev., and to be found in the elementary works on evidence, Peake’s Ev. 190, is examined and shown, by a reference to the cases quoted in the text, not to apply to original entries. In that case the court below declared the law to be, that “ where a person who was a witness to a particular transaction had made a memorandum at the time of certain facts for the purpose of perpetuating the memory of them, and could at any subsequent period swear that he had made the entry at the time for that purpose, and that he knew from the memorandum that the facts did exist, it would be good evidence, although he might not retain a distinct recollection of the facts themselves.”
In pronouncing the opinion of the court, Nott, J., after re-•eurring to the original leading English authorities, says: “If these authorities are to be relied on, I think the rule as laid down in the court below very well established. Indeed it is the only method by which births, marriages and deaths, and many other important facts of frequent occurrence, can, in most instances, be proved. And the same rule has, in several late decisions, been recognized by the decisions of this court.” And among others he cites the case of Pearson et al. v. Wightman, 1 Const. 344, where it was said that a witness who swore positively from written memoranda, though they did not recall to his memory a recollection of the facts, was admissible, and that such testimony was better evidence than an adventurous and unaided recollection. In a preceding part of the opinion, 2 Nott. & M. 333, the same learned judge says: “Thepropri-ety of the rule as laid down maybe inferred from its necessity, and the occurrences of every day furnish abundant proof that the ordinary transactions of life could not be carried on upon any other principle. The subscribing witnesses to deeds can seldom prove their execution, except by barely recognizing *177 their own signatures, accompanied with the further fact that they never do attest any writing which they have not seen executed. There are but few instances where they retain a distinct recollection of the fact of execution. The same may be said of the proof of merchants’ books. It seldom happens that the person making the cn:ry can recollect the delivery of the articles.” The same doctrine is recognized in the case of The Corporation of Columbia v. Harrison, 2 Const. 215; in Foster v. Sinkler, 1 Bay, 40; Herlock’s Adm’rs v. Riser, id.; and in numerous other cases in this and other states. And “ taking the American cases together, in the language of Judge ■Cowen, in the opinion before noticed, they form a commentary upon this kind of evidence clear and copious. And the result is, that original entries, attested, by the man who made them, may be read to the jv/ry, though he remember nothing of the facts which they record.”
To what exceptions, if any, the rule may be subject, it is not necessary now to inquire. In the case- before us, the copy having been admitted without objection to the nonproduction of the original entries, the rule was complied with to the extent required by the decisions to which we have adverted. And we are of opinion that the judge erred in wholly excluding the account from the jury, and confining them to the articles positively proved to have been delivered, by the testimony of the witness given upon his recollection, independently of his entries.
The evidence being competent and proper for the consideration of the jury, and having gone to them without objection, it was for them to give it that weight to which in their judgment it was entitled; and the court had no authority to withdraw it from them.
“Whenever evidence is offered to the jury which is in its nature 'prima facie proof, or presumptive proof, its character as such ought not to be disregarded; and no court has a right to direct the jury to disregard it, or to view it under a different aspect from that in which it is actually presented to them. Whatever just influence it may derive from that character, the jury have a right to give it; and in regard to the order in *178 which they shall consider the evidence in a cause and the manner in which they shall weigh it, the law has submitted it to them to decide for themselves; and any interference with this right would be an invasion of their privilege to respond to matters of fact.” Per Story, J., in Crane v. The Lessee of Morris et al. 6 Pet. 621.
2. The consideration of the second exception involves a question as to the admissibility, in our pleadings, of a replication.
The act of 1840, “ to regulate proceedings in civil suits,” 4 Stat. 88, declares that “the adoption of the common law shall not be so construed as to adopt the common law system of pleading; but the proceedings in all civil suits shall, as heretofore, be conducted by petition and answer.”
This provision was evidently intended not to prescribe the rules, but to designate the system of pleading to be observed in our courts. The attention of the legislature was directed to the fact, that different systems of conducting the allegations of the parties prevailed in different countries and in different jurisdictions in the same country. They had adopted as the body of our municipal law the common law of England, but they were averse to the system of pleading observed in the forums of that country; and recurring to the fact that a different system prevailed here with which the courts and bar were supposed to be familiar; and which was supposed to be more simple and equitable, and better adapted than the English system to attain the true and ostensible object of all systems of pleading — a just decision upon the, merits of the matters in controversy— they determined to retail* the existing system. Hence the antithesis which the last mem^ her of the sentence presents to the first; the words “petition and answer,” being used in opposition to “the common law system of pleading,” not to signify the stages of pleading to which these words give name, but to designate the system to which they belong. And, doubtless, to secure one uniform system of conducting the allegations of the parties, as well as to retain for that purpose the then existing system, they declare that the proceedings “ in all civil suits” whether *179 they would have appertained to the common law or chancery jurisdiction in England, “ shall, as heretofore, be conducted by petition and answer.” These words, then, were not intended as a restriction or limitation of the pleadings to the answer, but as the designation of a system of pleadings — that being the subject present to the mind of the legislature, who were not treating of a declaration or flea, or of a petition or answer, but of the remedial systems in which those terms are employed, and which they describe; and they used them not to denote a prescribed formulary, but as indicative of their intention to retain the then existing system in opposition to the common law and chancery systems of pleading in England. They retained the existing system without alteration, to 1)6 conducted, in their own language, “ as heretofore?’’
The inquiry then resolves itself into this: was a replication recognized by the laws anterior to the recited provision?
By reference to the laws of the state of Ooahuila and Texas, decree 277, sec. 6, art. 101, p. 266 of the laws and decrees, it will be seen that the former laws upon the subject did permit the parties to employ the replica and dtiplica, answering to the replication and rejoinder of the English system; but to these they restricted the pleadings. And although the body of the former laws was repealed at the period of the adoption of the common law, 4 Stat. pp. 3,4, yet the same legislature retained the. system of pleading in opposition to that of the common law. Id. 88, sec. 1. That it is allowable, therefore, to carry the pleadings beyond the answer, I cannot doubt. In a ease like the present, to reply the facts intended to be relied on in evidence to repel the defense disclosed by the answer, would seem most consonant to principle and convenient in practice. If the party must apprise the court orally of the facts intended to be relied on, before he can insist upon the introduction of his evidence, why not put them in writing upon the record, not only for the information of the court, but to apprise the opposite party of the proofs he must be prepared to meet? This would seem more consistent with fairness and justice than to permit a party to assume mentally the basis of his proofs, and disguise or conceal them for the purpose of *180 surprise and undue advantage. It would prevent confusion and embarrassment, surprise and injustice in the district courts, and it would present the case in a far more intelligible form for revision here. It would disincumber the record of a mass of matter embodied in bills of exceptions and statements of facts; for it is only by these, in the absence of pleadings, that the mattersarising subsequent to the answer can be presented here for revision.
In the case before us we have little more than conjecture by which to arrive at the object of the evidence objected to. It appears that the defendant relied on matters in setoff; and that, afterwards, evidence was offered by the plaintiff to prove a sale to the defendant of certain slaves. But were it not for some testimony respecting the terms and object of the sale, we should have no intimation from the record that it had been made in satisfaction of the indebtedness set forth in the answer. Whereas, had the plaintiff replied the payment or satisfaction, no obscurity or doubt could embarrass the subject.
The difficulty • of conforming the proof to the allegations, without a replication to new matter set up in the answer, has been often experienced in practice, and has sometimes been sought to be obviated by an amendment of the petition; but this practice is inconvenient arid in many cases a departure from principle, introducing into the petition, in cases like the present, a new and independent cause of action. When the plaintiff may desire to reply to the new matter, it cannot be necessary for that purpose to amend his petition, since the same end can be attained by a replication. To reject his pleading because it appeared to be a replication instead of an amendment^ would be to substitute a name for a thing;' and would be quite as technical as that system whose rules we reject.
But the practice in our courts has hitherto proceeded upon the supposition that our laws do not require any pleading, subsequent to the answer; and such, perhaps, is now the prevailing opinion. A practice so long adhered to and acquiesced in ought not, perhaps, to be now questioned; since the adoption at this day of a different rule might be produc *181 tive of great injury and injustice. An inveterate practice for a series of years, it has been held, will not be departed from. Ohio Con. 508. The consequence, however, is, that evidence which seems to have the effect of rebutting that adduced in support of the answer, or of repelling the legal effect of the latter, must be received, though it he in proof of no averment in the pleadings.
In the present instance, we suppose the testimony offered was intended to repel that adduced in support of the answer, and in this view it was admissible.
8. The remaining exception has reference to the oral testimony of facts evidenced by writing; and the objection is removed by the subsequent introduction of the written evidence-
4. It is contended, finally, that the court erred in permitting the plaintiff to remit so much of the verdict as in the opinion of the judge was not warranted by the evidence.
In the case of The Bank of the Commonwealth of Kentucky v. Ashley et al., 2 Pet. 327-8, the same objection was considered upon an application to remit after the case had been removed to the supreme court. The only doubt expressed in that case was whether it was not then too late to entertain the application. The court determined, however, that it was not, saying, “ The court thinks itself authorized to make a precedent in furtherance of justice, whereby a more convenient practice shall be introduced.” Id. 329. The right of the party to remit in the court below, it was said, upon the authority of English decisions, could not be questioned.
"We are of opinion that there was no error in permitting the remittitur to be entered, and that the second and third exceptions were not well taken; but that there was error in the charge of the court embraced in the first exception.
The judgment must therefore be reversed and the cause remanded for further proceedings.