### WESTCHESTER FIRE INS. CO. v. BIGGS.
(No. 490.)

(Court of Civil Appeals of Texas. Beaumont.
Nov. 11, 1919. Rehearing Denied
Dec. 3, 1919.)

1. INSURANCE ☞335(2)—FAILURE TO INCLUDE IN INVENTORY WORTHLESS ITEMS.

That insured in preparing an inventory of stock omitted old, unsaleable stock *held* not to avoid the fire policy, which required the taking of an inventory.

2. INSURANCE ☞335(4)—FAILURE TO PRODUCE INVENTORY DID NOT DEFEAT POLICY.

Where insured produced a memorandum of an inventory taken in July before the policies were issued, and a complete inventory taken in the following January, together with record of transactions occurring thereafter, *held* that the fact that the earlier inventory was burned, and so was not produced, would not defeat recovery, despite the requirements of the policy as to taking an inventory and keeping it in an iron safe.

3. TRIAL ☞139(1)—DIRECTION OF VERDICT ON CONFLICTING EVIDENCE.

The trial court is never justified in giving a peremptory charge where reasonable minds differ respecting a particular issue under investigation.

4. TRIAL ☞105(2) — RAISING OBJECTION TO EVIDENCE BY ASSIGNING ERROR TO REFUSAL TO DIRECT VERDICT.

Where defendant insurer did not object to the introduction of evidence establishing facts which would have been shown by the inventory had it not been destroyed, *held* that objections to such evidence cannot be raised by assigning error to refusal of motion for direction of verdict.

5. INSURANCE ☞335(4)—DESTRUCTION OF INVENTORY REMOVED FROM SAFE WITHOUT INSURED'S KNOWLEDGE.

Where insured duly prepared an inventory and kept it in an iron safe, the fact that the inventory was removed from the safe shortly before the fire without the insured's knowledge, by one of those from whom he acquired the

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

business, and, having been left in a desk, was destroyed, *held* not to avoid the policy.

6. INSURANCE ☞668(4)—FIRE INSURANCE; BREACH OF RECORD WARRANTY CLAUSE FOR JURY.

In an action on a fire policy covering fixtures as well as a stock of goods, defendant's motion for direction of verdict, on the ground that plaintiff failed to make proof of any loss on fixtures which would preclude him from recovery, since the evidence showed he breached the record warranty clause, *held* properly denied.

7. INSURANCE ☞660—SUBMISSION OF INSURED'S BOOKS TO JURY.

In an action on a fire policy where it appeared that the inventory taken before the policy was written was destroyed through no fault of insured, *held* that the submission of books and other data produced by the insured was proper.

8. APPEAL AND ERROR ☞1050(1)—HARMLESS ERROR IN ADMISSION OF SECONDARY EVIDENCE.

In an action on a fire policy, the submission in evidence of data presented by insured, it appearing that the original inventory was burned because removed from an iron safe by some one without insured's knowledge or consent, *held* harmless, if erroneous, as it could not have affected the result.

Error from District Court, Panola County; Daniel Walker, Judge.

Action by J. I. Biggs against the Westchester Fire Insurance Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Thompson, Knight, Baker & Harris .and Will C. Thompson, all of Dallas, for plaintiff in error.

W. G. Banks, of Shreveport, La., for defendant in error.

BROOKE, J. By his original petition, the plaintiff alleged: That he was the owner of a stock of merchandise, consisting principally of some drugs and sundries, and of some furniture and fixtures and soda fountain, located in Beckville, Tex., and that on October 17, 1916, defendant issued him its policy of insurance in consideration of a $94.20 premium, insuring him against loss by fire to the amount of $1,000 on drugs, $100 on furniture, and $400 on fountain; that on November 1, 1916, in consideration of $68.20, it issued him an additional policy, insuring him against fire to an amount of $1,000 on stock. Both of these policies were for a year, and are attached to the petition as exhibits. That on May 6, 1917, the property was destroyed by fire, and was at that time of the value of $4,706.57, as shown by Exhibit C attached to the petition. That after the fire defendant received from plaintiff no-tice and proof of loss and demand for payment, which was refused. Ownership is sufficiently alleged.

By its amended answer the defendant alleged a general demurrer, special exceptions, general denial, and specially set up the record warranty clause contained in each of the policies sued on, and alleged a breach of each of the provisions of same, and further alleged the pendency of a garnishment suit, and prayed protection against it.

The case was submitted to the jury on special issues, to which they returned their answers, finding, in substance:

That the cash value of the merchandise in the store at the time of the fire was $3,640.02; that the cash value of the furniture, fountain, and fixtures was $1,082.65; that the plaintiff did, within 12 calendar months prior to November 1, 1916, take a complete itemized inventory of his stock in his store at Beckville; that the plaintiff did, between July 4, 1916, and the time of the fire, make, prepare, and keep in the regular course of his business a set of books, which clearly and plainly present a complete record of his business, including all purchases and all sales, whether made for cash or credit; that the plaintiff, Biggs, did, between October 17, 1916, and the time of the fire, make and prepare and keep in the regular course of his business a set of books, which clearly and plainly present a complete record of his business, including all purchases and all sales, whether made for cash or on credit; that the plaintiff did, between November 1, 1916, and the time of the fire, make and prepare and keep in the regular course of his business a set of books, which clearly and plainly present a complete record of his business, including all purchases and all sales, whether made for cash or credit; that the plaintiff did, between July 4, 1916, and January 1, 1917, make and prepare in the regular course of his business a record, showing all of the sales made by him during that period for cash.

Judgment was rendered in favor of the plaintiff and against the defendant for $2,500, with interest from April 30, 1918, provision being made to take care of the garnishment pleaded. Defendant duly made its motion for new trial, which was overruled by the court, and defendant excepted and gave notice of appeal to this court, duly applied for writ of error, and filed its writ of error bond, citation in error, after Mr. Biggs could not be found, being served on his attorney of record, on October 8, 1918.

We make the following additional statement of facts in this case:

The plaintiff below began business about the 4th of July, 1916. At· ·that time he bought out the going business of his father

and uncle. He was to pay them 75 per cent. of the invoice price of their stock, and to ascertain what that sum might be an inventory was taken on that date of a part of the stock. One of the questions involved here is whether that inventory constituted a complete itemized inventory. One of the policies sued on was issued October 17, 1916, and covers $1,000 on stock of merchandise, $100 on furniture and fixtures, and $400 on soda fountain. The other policy was issued November 1, 1916, and described stock. Each of these policies contained the usual record warranty clause. To show a compliance with this clause, the plaintiff produced upon the trial an inventory taken January 1, 1917, his bank book, a book called "cash book" in which appear purchases made during 1917, and a gray book (ledger), in which appear, so the assured testified, a record of purchases for 1916—though this is attacked as failing to show such purchases as is required by the terms of the policy—and also for 1917, a record of cash sales for 1917, and a record of sales for sales on credit for 1916 and 1917. The inventory for 1916 was burned in the fire which occurred May 6, 1917, while in the store and out of the safe, under circumstances hereafter set out.

The Westchester Fire Insurance Company comes to this court complaining of the errors committed by the trial court as evidenced by the following assignments of error.

The first assignment of error is as follows:

"The court erred in refusing and further erred in not giving in charge to the jury defendant's first requested charge, directing a verdict for it, for the reason, among others, that the undisputed evidence showed that the policies sued on, and each of them, was breached and avoided by the plaintiff in the following particulars:

"(a) Failure to take a complete itemized inventory within 12 months prior to the date of each policy or 30 days thereafter.

"(b) Failure to make and prepare within time required a set of books showing a complete record of business transacted, as required by each policy.

"(c) Failure to keep, preserve, and present as required inventory assured says was taken in July, 1917.

"(d) Failure to comply with first section of clause.

"(e) Failure to comply with second section of clause.

"(f) Failure to comply with third section of clause."

[1] The first proposition under this assignment is:

"The undisputed evidence being that the inventory of July, 1916, failed to include some 15 per cent. of the stock, it was not, as a matter of law, any such complete inventory as constitutes any compliance with requirements of the policy as to the taking of inventory, so that peremptory instructions for the defendant in the court below should have been given, since the evidence was also undisputed that no such inventory was taken within 30 days after the issuance of either policy."

On the contrary, it is urged that, it being usual and customary for all merchants to drop from their annual inventories old and discarded stock, failure to include or consider such items in making inventory will not constitute breach of warranty clause in insurance policy requiring that complete inventory be taken.

We are of opinion that on this proposition the court was not in error, and it would, perhaps, be well in this connection to state some of the testimony on this point.

Defendant in error testified:

"The stock of goods that I bought from my father and uncle was the stock of goods that they had in the store for a long time; that is, some of it was; I mean that a small per cent. of it was old stock. I would say that about 15 per cent. of it was old stock, but we did not include that in taking stock, but just left the old stuff here, and that did not go on my inventory. I do not know just how much there was of it, but probably not over 15 per cent."

This testimony was not considered for any purpose except showing that the property had no value, and, if it had any value, it was not purchased by assured, as the only purchase was the goods shown in the inventory.

We do not believe that the cases cited by plaintiff in error have any application here. In the case of Dorroh-Kelly Mercantile Co. v. Orient Insurance Co., 104 Tex. 199, 135 S. W. 1165, the parties had only prepared a partial inventory of the valuable and salable merchandise on hand. This is a case where a complete inventory of all the valuable and salable merchandise was taken. If the old stock omitted in this case was not of sufficient value to be accounted for anything at the time of the sale of the stock in bulk, it would clearly come within the rule announced by plaintiff in error in its brief, that is, that "it is true that the omission of unimportant items of little value and consequence would not be sufficient to defeat the right of recovery."

The policies sued on each provided in part as follows:

### "Record Warranty Clause.

"The following covenant is hereby made a part of this policy and a warranty upon the part of the assured:

"Section 1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year and within twelve months of the last preceding inventory, if such has been taken. Unless such an inventory has been taken within twelve calendar months prior to the date of this policy, and together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of this policy, one shall be taken within thirty days after the date

of this policy, or in each and either case this entire policy shall be null and void.

"Sec. 2. The assured will make and prepare, in regular course of business, from and after the date of this policy, a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and on credit, or this entire .policy shall be null and void.

"The term 'complete record of business transacted,' as used above, is meant to include in said set of books a complete record of all the property which shall go into the premises and be added to the stock, and of all property taken from the stock, whether by the assured or by others, even though not technically purchases or technically sales.

"If the business of the assured under this policy be that of manufacturing, this complete record of business transacted must, in addition, show all the raw material received, and all products manufactured therefrom, including the cost of manufacture, and must show waste in process of manufacture, and must show all the raw material and manufactured property which is taken from the building described.

"Sec. 3. The assured will keep and preserve all inventories of stock on hand during the current year and also those taken during the preceding calendar year, which are on hand when this policy is issued, and will keep and preserve all books which are then on hand showing a record of business transacted during the current calendar year, and the preceding calendar year.

"The assured will also keep and preserve all inventories taken after the issuance of this policy, and all books made and prepared for the issuance thereof, showing a record of the business transacted.

"The books and inventories, and each of the same, as called for above, shall be by the assured kept securely locked in a fireproof safe at night, and at all times when the business mentioned in this policy is not actually open for business; or, failing in this, the assured shall keep such books and inventories, and each of them, in some secure place not exposed to a fire which would destroy said building; and, in event of a loss or damage insured against to the personal property mentioned therein, said books and inventories, and each of the same, must be by the assured delivered to this company for examination; or this entire policy shall be null and void and no suit or action shall be maintained thereon for any such loss.

"It is understood and agreed that this clause and the requirements thereof is one of the inducing causes to the acceptance of the risk herein assumed and the issuance of this policy, and that the terms and requirements hereof are material to the risk, and to this insurance, and to any loss or damage happening to the property described in this policy.

"It is further agreed that the receipt of such books and inventories, or the request for them or either of them, and the examination of the same, shall not be an admission of any liability under this policy, nor a waiver of any provision or condition of this policy, or of any defense to the same."

Plaintiff in the court below testified that he took inventory of the stock on January 1, 1917. Policy No. 158794, dated November 1, 1916, covered $1,000 of the stock, and contains the same provisions as policy No. 158792, which was issued on October 17, 1916. Plaintiff in the court below further testified that he started in business at Beckville, and bought out a business owned by his uncle and his father, who conducted the business in the name of Biggs Bros.; that he did not know exactly how long they had been in the drug business at Beckville, but for some 18 or 20 years; that he bought them out about the 1st of July, 1916; that about the 4th or 5th of July was when he bought them out; that the basis of this purchase and sale was that they were going to take inventory of the stock, and that he (plaintiff) was to give them so much on the dollar for it; that plaintiff took that inventory with either his father or his uncle, who represented Biggs Bros.; that plaintiff was to pay them 75 cents on the dollar on this invoice price; that he started taking invoice about the 1st of July, 1916, and took it for two or three days; that plaintiff and his uncle took the inventory, sometimes plaintiff writing while his uncle called, and then his uncle writing while plaintiff called.

Without going into the matter more completely, we are of opinion that there was no error in the court's action, and this proposition is therefore overruled.

[2] Plaintiff in error's second proposition under this assignment is as follows:

"The policy being avoided by the failure of the assured to preserve and present after the fire the inventory taken in July, 1916, a peremptory instruction should have been given for the defendant as to this breach."

Defendant in error testified:

"The fire occurred on May 5th or 6th, about 10 months after I bought from my father and uncle. The fire occurred somewhere about 4 o'clock in the morning; it was burned up between 4 and 6 o'clock. At the time of the fire the store was closed. It is a fact that on the 17th of October and the 1st of November, 1916, I had this inventory that was taken on the 1st of July, 1916, and it is a further fact that the inventory was burned up in the fire that destroyed my store in May.

"The inventory that was burned up was burned up in the store. It was in there at the time of the fire. I did all the bookkeeping myself. There is nothing in the books that I haven't been asked about; I have been interrogated about everything in every book I have got; and the books I have with me here are all the books I have got of my business from the start until the burn, except the inventory that I took and that got burned up in the fire.

"The invoice of July 1, 1916, was kept in the store, in the safe. I did not take it out of the safe, and it was not taken out with my authority, and I thought it was in the safe at the time of the fire. All of my other papers were preserved, including the invoice of January 1st, and all of my books and the summary as shown in the books; and the only thing that was lost

by the fire was this statement of July 1st, showing what I had purchased. By 'stock' is meant the stock of drugs and fixtures covered by that invoice, the aggregate amount. It was the same stock of goods that I was offering for sale, together with the new goods I had purchased. I placed the inventory of July 1, 1916, in the safe, and I thought it was there in the safe at the time of the fire.

"With reference to the loss of this inventory I put the inventory in the safe some two or three weeks prior to the fire, and never looked at it again. It was in the safe the last time I saw it, and was not taken from the safe with my knowledge or authority."

It seems that defendant in error produced a complete itemized inventory taken January 1, 1917, and a full set of books showing all business transacted down to May 6, 1917, the date of the fire, and plaintiff in error does not object to this part of defendant in error's records. Biggs testified:

"Of course we sold goods out of the store all during 1916; I kept a record of those sales in my bank book. I personally put down in my bank book the amount of sales that I made out of the store during 1916; you have the bank book I refer to—no, I didn't write any of these entries in the bank book, but I was there, and they were written down correctly."

In the case of Western Assurance Co. v. Kemendo, 94 Tex. 367, 60 S. W. 661, where it was contended that a policy of insurance had been breached by reason of loss of inventory, Justice Brown said:

"If the assured had furnished anything from which the information contracted for could be with reasonable certainty ascertained, then the question of substantial compliance would be before the court."

In that case, however, the assured had furnished no complete itemized inventory of any character from which the insurance company could reasonably ascertain the nature and amount of loss. In this case we have a complete inventory on hand, and complete system of records and a summary of July 4th inventory, from which it can be ascertained the amount of the loss and nature of the goods destroyed. There is no contention but that the record from January 1, 1917, down to May 6, 1917, is complete in every detail. The usual cases where the assured failed to furnish complete itemized inventory would therefore not apply in this case. The only possible purpose for which plaintiff in error could have desired a statement of the business previous to January 1st was to secure a basis of values from which the profits prior to January 1, 1917, could be figured in order to estimate the profits subsequent to January 1, 1917, and thereby obtain an accurate estimate of the actual stock on hand at the time of the fire. All this data was fully and completely furnished to plaintiff in error, and the jury, in

passing on the facts, determined that defendant in error had from July 4, 1916, down to the time of the fire, prepared and kept a record which clearly and completely presented a complete record of his business. See Brown v. Ins. Co., 89 Tex. 594, 35 S. W. 1060; Westchester Fire Ins. Co. v. McMinn, 198 S. W. 638, and authorities there cited; Bank v. Cleland, 36 Tex. Civ. App. 478, 82 S. W. 337; McNutt v. Ins. Co. (Tenn. Ch.) 45 S. W. 61. We find no merit in this proposition.

[3, 4] The third proposition is:

"Since the undisputed evidence showed that the policies sued on became avoided by the failure of the assured to keep a record of sales for cash during 1916, when they were required to be kept, the jury should have been so instructed."

On the contrary, it is contended that where secondary evidence has been introduced in the trial court to supply the loss of an original preceding inventory called for in the record warranty clause, and same has been considered by the court and jury, without objection or motion to strike out same upon the part of plaintiff in error, a verdict and judgment based upon such evidence should not be disturbed.

See Underwood v. Parrott, 2 Tex. 168; Carter v. Eames, 44 Tex. 544; Long v. Garnett, 59 Tex. 229; Matlock v. Glover, 63 Tex. 231; Brown v. Lessing, 70 Tex. 544, 7 S. W. 783; Davis v. Bargas, 12 Tex. Civ. App. 59, 33 S. W. 548; McCarty v. Johnson, 20 Tex. Civ. App. 184, 49 S. W. 1098; Warren v. Kohr, 26 Tex. Civ. App. 331, 64 S. W. 62; Mensing Bros. v. Cardwell, 33 Tex. Civ. App. 16, 75 S. W. 347.

It seems that if as a matter of law nothing less than a strict compliance with the warranty clause as to the production of the identical previous inventory would suffice, then plaintiff in error would have its remedy by assigning as error the action of the court in admitting the summary for the purpose stated. In the case of Brown et al. v. Lessing et al., supra, the court said:

"The appellants asked charges to the effect that the jury would find in their favor unless the sale had been proved by the introduction of the written instrument by which it was made. This was refused, and correctly so. If the appellant had objected to proof of the sale other than by production of the instrument by which it was made, the objection doubtless would have been sustained, unless some sufficient reason for its nonproduction was shown, but no such objection was made, and, proof other than primary having been introduced without objection, the jury were entitled to consider it."

Failing to do this, there is no issue for the court to consider. As long as the testimony was introduced without objection, it is too late to raise this issue through an assignment of error which merely alleges that the

court erred in refusing to instruct a verdict for the defendant below. The trial court is never justified in giving a peremptory charge, where reasonable minds differ respecting a particular issue under investigation. Railway Co. v. West, 149 S. W. 206; Ward v. Powell, 127 S. W. 851. This proposition is also overruled.

[5] Plaintiff in error contends by its fourth proposition under its first assignment of error that since the assured failed to make a record of purchases during 1916 when such record was required, the policies became void, and the jury should have been so instructed.

On the contrary, it is contended that where assured produced a complete record of his business from July 4, 1916, down to May 6, 1917, which included a complete inventory taken on January 1, 1917, and a summary taken on July 4, 1916, the original inventory of July 4, 1916, having been destroyed through no fault of assured or his servants, there was no breach of the record warranty clause requiring that such records be preserved.

Plaintiff in the court below testified:

"I had placed the inventory of July 1, 1916, in the safe, and it was not taken out of the safe by me nor with my consent, and I thought it was there in the safe at the time of the fire."

J. W. Biggs testified:

"My name is J. W. Biggs. I was summoned by the defendant as a witness in this case. I remember the burning of J. I. Biggs' store up at Beckville; that is, I remember the night it was burned. I was at one time connected with the store, but had sold out. An inventory was taken in 1916, from July 4th, for 2 or 3 days. I had something to do with the taking of that inventory. Just before the fire I saw that inventory. I got the inventory out of the safe. I don't think Joe told me to get it. I went there to look at it for some personal information. I did not put the inventory back in the safe. I don't see how Joe could have known about that, because he was not back where I was at the time, he was in the front of the store. I was checking over the inventory when some one—I think it was Mr. Pink Barber—called me to the back door for just a minute, and I opened the top drawer of the desk and laid the inventory in there, expecting to come back in a minute and get it. Well, I was out there some little bit, and forgot to go back and put it back. Joe knew nothing at all about it; I did not tell him anything about it. I was not working for Joe, and had nothing whatever to do with the business; the business was in Joe's charge; I had turned it over to him in July, 1917."

In the case of Western Assurance Co. v. Kemendo, 94 Tex. 367, 60 S. W. 661, Mr. Justice Brown of the Supreme Court said:

"If the inventory was not produced because it was lost or destroyed by some means not constituting fault, negligence, or design on the part of the insured or his employés, and if the insured used ordinary care to preserve the inventory in accordance with the terms of the contract, then the failure to produce it would not work a forfeiture of the insurance policy."

It would, indeed, be a harsh ruling that assured, after furnishing such a complete record as he has in this case, including one complete itemized inventory, should forfeit his insurance for the reason that an old inventory was missing, when the information required is furnished by a summary of this inventory which was preserved by assured. It would be hard to figure out a more substantial compliance with the record warranty clause, unless it be exact in every particular. This case, however, goes much further. The only missing paper was lost through no fault of assured or his agents. Assured exercised every care to keep it in the safe, and it remained to be developed upon the trial of the case that just before the fire a former owner of the stock wished some personal information from off the inventory, secured it without knowledge of assured, and forgot to return it to the safe. This brings up a question which no court could reasonably pass on except in favor of assured. If some stranger in passing through a store should abstract from the files or safe of assured some book or paper which would require assured to furnish the information required by an insurance company from other sources, would assured policy be canceled? If that were true, then the taking the goods from assured without his knowledge and without the making of a proper record thereof would invalidate his insurance. The element of good faith should at least enter into the consideration of this matter, and where assured has made every effort to comply with the record warranty clause in preserving his records, and has furnished all of the information that any company could wish for in order to accurately determine the loss, it would seem that no grounds could exist for a forfeiture of the policy. We find no error in the action of the court on this matter, and therefore this proposition is overruled.

[6] The fifth proposition of plaintiff in error is as follows:

"Either the plaintiff has failed to make proof of any loss on fixtures, which could preclude him from any recovery, since the undisputed evidence showed that he breached the record warranty clause, or he has shown a loss of more than the items of insurance on fixtures, in which event a peremptory instruction should have been given for the defendant below, and the court rendered judgment for the plaintiff for the fixtures."

On the contrary, it is urged that where assured furnished in evidence a record of cash sales and record of purchases for the year previous to that in which the fire oc-

curred, and detailed the manner in which an accurate record of his business could be determined from the books presented, there was no breach of record of warranty clause requiring that a complete record be kept.

The court submitted the following issues to the jury:

"Question No. 3: Did the plaintiff, Biggs, within 12 calendar months prior to November 1, 1916, take a complete itemized inventory of his stock in his store at Beckville? Answer this question Yes or No." (To which question the jury answered "Yes.")

"Question No. 4: Did the plaintiff, Biggs, between July 4, 1916, and the time of the fire, make and prepare and keep, in the regular course of his business, a set of books which clearly and plainly present a complete record of his business, including all purchases and all sales, whether made for cash or on credit? Answer this question Yes or No." (To which question the jury answered "Yes.")

"Question No. 5: Did the plaintiff, Biggs, between October 17, 1916, and the time of the fire, make and prepare and keep, in the regular course of his business, a set of books which clearly and plainly present a complete record of his business, including all purchases and all sales, whether made for cash or on credit? Answer this question Yes or No." (To which the jury answered "Yes.")

"Question No. 6: Did the plaintiff, Biggs, between November 1, 1916, and the time of the fire, make and prepare and keep in the regular course of his business a set of books which clearly and plainly present a complete record of his business, including all purchases and all sales, whether made for cash or on credit? Answer this question Yes or No." (To which question the jury answered "Yes.")

"Question No. 7: Did the plaintiff, Biggs, between July 4, 1916, and January 1, 1917, make and prepare, in the regular course of his business, a record showing all of the sales made by him, during that period, for cash? Answer this question Yes or No." (To which question the jury answered "Yes.")

The court also gave two charges which were requested by plaintiff in error, as follows:

"Did the plaintiff have on hand on October 17, 1916, a complete itemized inventory of his stock, together with a set of books showing a complete record of business transacted?" (To which the jury answered "Yes.")

"Did the plaintiff have on hand on November 1, 1916, a complete itemized inventory of his stock, together with a set of books showing a complete record of business transacted?" (To which the jury answered "Yes.")

No other charges were requested by plaintiff in error other than the one to instruct a verdict in its favor.

See Westchester Fire Ins. Co. v. McMinn, 198 S. W. 638; Ins. Co. v. Hardin, 151 S. W. 1152; Fire Ass'n v. Masterson, 83 S. W. 49.

It seems that the books introduced by plaintiff below, together with the testimony of assured, clearly presented an issue which was properly submitted to the jury, and in this case the findings of fact by the jury upon these points were never objected to in the motion for new trial. Plaintiff in error does not contend that the verdict of the jury was contrary to the evidence, but merely assigns as error the fact that the court refused to instruct a verdict in its favor. In our judgment, the only question here for the court is whether or not there was sufficient evidence before the court to authorize it to submit the issue to the jury. We overrule this proposition.

[7, 8] Plaintiff in error's second assignment of error is that the court erred in submitting any issue to the jury, since the evidence was undisputed that each policy was breached.

The counter proposition to this is that where assured produced books, inventories, and other data to show compliance with the record warranty clause, from which records and data the jury could, by reasonable consideration of same, determine whether or not the record warranty clause had been complied with, it was proper for the trial court to submit such evidence to the jury for consideration.

It would manifestly have been error for the trial court to have refused to submit these books and this testimony to the jury for consideration, and the fact that the trial court did submit them is the only error that the plaintiff in error complains of. It is our position that the error alleged could not have affected the rights of plaintiff in error in any way.

The verdict of the jury exactly coincides with the undisputed testimony as to value, and if a division of the items is desired, it can be accurately determined from the testimony and the findings of the jury just what was meant in this respect. In addition to this, plaintiff in error stood by in the open court and heard the reading of the verdict, and did not complain of same at the time when the error could have been corrected.

If there was ever any serious question in this case, it hinged around the proposition of whether the assured could properly account for the loss of the itemized inventory for the preceding year, and, if not, could he show such substantial compliance as would avoid a breach of the record warranty clause? It is shown conclusively that assured, with all the care of an ordinarily prudent man, carefully preserved the old invoice in his safe, and that just preceding the fire it was removed from the safe without the knowledge or consent of assured, by one who had no connection with the business. Not only is this true, but assured went further, and supplied the loss by introducing in evidence a summary of the inventory for the express purpose of showing a substantial compliance of the record warranty clause which evidence was considered in the trial of

the case without objection upon the part of plaintiff in error.

After a careful consideration of the matter complained of, we are of opinion that the court did not err, and the assignment is overruled.

The third assignment of error is that no judgment can be rendered on furniture and fixtures or fountain since the policy is divisible on these items, and there is no separate finding as to each. Without comment we overrule this assignment. The fourth, fifth and sixth assignments are also overruled, and we might say that in our opinion the matters complained of did not constitute a breach or violation of any of the warranties or conditions or provisions of the policy. Ins. Co. v. Angier, 214 S. W. 451.

Finding no reversible error, we are forced to the conclusion that the case should be in all things affirmed; and it is so ordered.