## WESTCHESTER FIRE INS. CO. et al. v. BRANTLEY.

### No. 4484.

Court of Civil Appeals of Texas Texarkana.

June 29, 1934.

Rehearing Denied July 19, 1934.

Thompson, Knight, Baker & Harris, of Dallas, for appellants.

J. A. Ward, of Mt. Pleasant, for appellee.

JOHNSON, Chief Justice.

Appellee, Charles L. Brantley, owned and operated a general mercantile store at Winfield, Tex. On October 17, 1931, appellant Colonial Fire Underwriters issued to appellee a fire insurance policy covering $800 on the stock of merchandise and $200 on the fixtures. On May 30, 1932, appellant Westchester Fire Insurance Company issued its policy of insurance covering $2,000 on the stock of merchandise. The stock of merchandise and the fixtures were totally destroyed by fire on June 15, 1932, at 1:00 a. m. This suit is prosecuted by appellee to recover upon the policies. Appellants answered by general denial and specially pleaded a forfeiture of the policies by appellee, in that they alleged that he failed to comply with the record warranty clause contained in each of the policies, citing: .

"Section 1. The Assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and within twelve months of the last preceding inventory if such had been taken. Unless such inventory had been taken within twelve calendar months prior to the date of this Policy, and together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of this Policy, one shall be taken within thirty days after the date of this Policy, or in each and either case, this entire Policy shall be null and void.

"Section 2. The Assured will make and prepare in the regular course of business, from and after the date of this Policy, a set of books, which shall clearly and plainly pre-

sent a complete record of business transacted, including all purchases, sales and shipments, both for cash and on credit, or this entire policy shall be null and void.

"The term 'complete record of business transacted,' as used above, is meant to include in said set of books, a complete record of all the property which shall go into the premises and be added to the stock, and of all property taken from the stock, whether by the Assured or by others, even though not technically purchases or technically sales.

* * *

"Section 3. The Assured will keep and preserve all inventories of stock taken during the current year and also all those taken during the preceding calendar year, which are on hand when this Policy is issued, and will keep and preserve all books which are then on hand, showing a record of business transacted during the current calendar year and the preceding calendar year.

"The Assured will also keep and preserve all inventories taken after the issuance of this Policy, and all books made and prepared after the issuance hereof, showing a record of business transacted.

"The books and inventories, and each of them, as called for above, shall be by the Assured kept securely locked in a fireproof safe at night, and at all times when the building mentioned in the Policy is not actually open for business, or, failing in this, the Assured shall keep such books and inventories, and each of them, in some secure place not exposed to a fire which would destroy said building; and, in event of a loss or damage insured against to the personal property mentioned herein, said books and inventories, and each of the same, must be by the Assured delivered to this Company for examination; or this entire Policy shall be null and void, and no suit of action shall be maintained hereon for any such loss."

Trial was had to a jury. Upon answers, favorable to appellee, in response to special issues submitted, judgment was entered for appellee and against Colonial Fire Underwriters for $827.71, and against Westchester Fire Insurance for $1,569.28. Both defendants have appealed.

■ "The Colonial Fire Underwriters first takes the position by itself that under the terms of the record warranty clause the assured (appellee) either had *to have on hand at the date of its policy* (October 17, 1931) an inventory of stock taken within twelve months, or had to take one within thirty days after the date of the policy." This contention

is correct. German Ins. Co. v. Bevill (Tex. Civ. App.) 126 S. W. 31; Mechanics' & Traders' Ins. Co. v. Davis (Tex. Civ. App.) 167 S. W. 175; Hartford Fire Ins. Co. v. Adams (Tex. Civ. App.) 158 S. W. 231. But the facts do not show that this provision of the record warranty clause was breached by appellee. The required inventory had been taken January 1, 1931, and was preserved until some time after the taking of the January, 1932, inventory.

■ It is contended by both appellants that appellee's failure to produce the 1931 inventory after the fire as a previous inventory forfeited the policy. It will be noted that the record warranty clause in this respect provides: "The Assured will keep and preserve all inventories of stock taken during the *current* year and also all those taken during the *preceding* calendar year, which are on hand when this policy is issued." This provision of the policy required of appellee to keep and produce the January 1, 1931, inventory, as well as the January 1, 1932, inventory. Continental Ins. Co. v. Cummings, 98 Tex. 115, 81 S. W. 705. Appellee testified that he kept his invoices, books, and records at his residence; that he had his January 1, 1931, inventory, after taking the January 1, 1932, inventory; that in some way or other the January, 1931, inventory had been destroyed; that his wife and daughter had a house-cleaning and that he "thought maybe they thought they were worthless and burned them up." Appellee produced the January 1, 1932, inventory, but, for reasons above stated, was unable to produce the January 1, 1931, inventory, which loss or destruction and failure to produce the January 1, 1931, inventory does not appear to be the result of fault, negligence, or design of appellee or his agents. In such circumstances, and in consideration of the records, hereafter discussed, which were produced by appellee, it is thought that appellee's failure to produce the January 1, 1931, inventory should not be held to constitute a forfeiture of the policy. Home Ins. Co. v. Flewellen (Tex. Civ. App.) 221 S. W. 630; Westchester Fire Ins. Co. v. Biggs (Tex. Civ. App.) 216 S. W. 274.

■■ It is the further contention of appellants that appellee failed to keep and produce a set of books, or records, of his business sufficient to meet the requirements of the record warranty clause of the policies.

In this respect appellee testified that he did not have an iron safe; that he kept his books and records at his residence when not in use during the day; that he had a Greenwood ledger in which he kept a record of all

his business, including his daily sales for cash and on credit; that he also had a customers' ledger in which he recorded his credit sales; that he had a wholesale ledger in which was recorded his purchases; that he posted his books on the evening before the fire, at the store; that he thought he carried them home but they were not there the next morning after the fire.

Appellee produced the following original records of his business: January 1, 1932, invoice; his original invoices of goods purchased by him during 1931 and 1932, to date of fire; his bank deposit slips, which deposit slips appellee testified represented his daily cash sales plus collections on account, less $20 per month withdrawn in cash by him for family expenses; appellee also produced all tickets of credit sales, those that were paid as well as those that were unpaid.

From this record appellee arrived at the amount of merchandise destroyed by fire in the following manner and amounts: January 1, 1932, inventory of stock, $4,600, plus original invoices of goods purchased from January 1, 1932, to date of fire, $713.67; total $5,313.67. From which amount he subtracted total of bank deposit slips, $1,636.60, less collections on 1931 accounts, $138.94, which left $1,497.66; to which he added the total of 1932 unpaid credit sales tickets, $205.03, plus $120.00 withdrawn for family expenses. Ten per cent. as profit charge was deducted from the amount of goods sold to arrive at cost price of goods sold, which calculation arrives at a balance of $3,673.24 as the amount of merchandise in stock at the time of the fire.

It seems to us, in the circumstances, no design or fraud being charged against appellee in the loss or destruction of his books, that the original records from which the books had been made, and could again be produced, and which are sufficient to enable the insurer with reasonable certainty to arrive at the amount of the loss, would be that substantial compliance of the record warranty clause required by law. In 24 Tex. Jur. § 219, p. 1000, the rule in Texas is stated as follows: "A substantial compliance with an iron-safe or record warranty clause is all that is required. This is in keeping with the purpose of such a warranty which is accomplished when it is shown that the insured has kept such a record of his business as will enable a man of ordinary intelligence to ascertain from the same with reasonable certainty the amount and the value of the goods destroyed."

Appellants have made other assignments which we have considered, but not finding them to present error, they are respectfully overruled.

The judgment of the trial court is affirmed.