## PROVIDENT FIRE INS. CO. v. ASHY.

### No. 3820.

Court of Civil Appeals of Texas. Beaumont.

April 4, 1941.

Rehearing Denied April 9, 1941.

Bryan & Bryan, of Houston, for appellant.

Manry & Cochran, of Livingston, for appellee.

WALKER, Chief Justice.

This was a suit in district court of Polk county by appellee, J. W. Ashy, by next

friend, W. J. Ashy, against appellant, Provident Fire Insurance Company, on a policy of fire insurance, $1,000 on stock of merchandise and $500 on fixtures, destroyed by fire in February, 1940. The nature of appellant's answer is indicated by its propositions of error. On the verdict of the jury, answering special issues, judgment was for appellee for the principal amount of his policy, from which appellant has prosecuted its appeal to this court.

■ Appellant's first point is that on the undisputed evidence appellee violated the iron safe clause of his policy in that he "failed to make, prepare, have and keep securely locked in a fire-proof safe at night, or in some secure place not exposed to a fire which would destroy the building containing the stock of goods insured a complete written record of the business conducted" and "failed to make, preserve and deliver over and make available, after the loss of a complete itemized inventory of stock on hand, for not only within twelve months prior to the date of the policy, but for the entire calendar year of the last preceding inventory." We give the iron safe clause:

"The Assured will take a complete itemized inventory of stock on hand at least one in each calendar year, and within twelve months of the last preceding inventory, if such has been taken. Unless such inventory has been taken within twelve calendar months prior to the date of this Policy, and together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of the Policy, one shall be taken within thirty days after the date of this Policy or in each and either case, this entire policy shall be null and void."

On the issue of "iron safe clause," the jury found the following facts: (a) After the fire, appellee delivered to appellant "all of the written records of the business which had been regularly kept and made," by him in connection with his business prior to the fire; (b) On the night of the fire, appellee had in a fireproof safe "all of the written records, books and inventories" of his business, regularly made and kept by him prior to the fire, showing a complete record of the business transacted by him during the current calendar year up to the date of the fire, and the preceding calendar year; (c) Prior to the date of the fire, appellee kept a record of his credit sales and of the family withdrawals from the stock of merchandise; (d) Appellee delivered to appellant "all of the written records of the business which had been regularly kept and made" by him in connection with his business prior to the fire; (e) After the fire, appellee delivered to appellant "all of the written books, records and inventories taken and kept" by him in the regular course of business reflecting the business transacted by him for the calendar year prior to the date of the fire. We give the evidence on these issues. W. J. Ashy testified (questions and answers reduced to narrative):

"The paper you exhibit me is the original inventory of the fixtures; this instrument is the original copy of the inventory I took at that time. The total amount of the fixtures in the building destroyed by fire on the 15th of February is $1,040.00. I took that inventory on the first of January. * * * I took an inventory of the hardware. This paper is the inventory of the hardware; it shows the separate items of the hardware. I took that inventory on January First. The value of the hardware was $280.51. I have other inventories of the dry goods. This instrument you hand me is an inventory of the dry goods; the original inventory. I took stock on January 4, 1940, took an inventory on January 4, 1940."

The inventories, as copied into the statement of facts, listed a detailed statement of the various items of merchandise, together with its value. The inventory gave a full and detailed statement of all merchandise in the building on January 1, 1940, forty-five days before the fire. Appellee also introduced a record of his daily sales from January 1, 1940, through February 13, 1940, at which time the building and contents were destroyed by fire. The inventory of the merchandise showed a cash market value of $2,113.52. From the date of the inventory to the date of the fire, appellee offered in evidence books showing gross sales of $972.85. Appellant was not entitled to an instructed verdict, nor did the court err in overruling its motion for verdict non obstante veredicto, on the issues raised by its pleadings on the "iron safe clause." Westchester Fire Ins. Co. v. Brantley, Tex.Civ.App., 73 S.W.2d 961; 24 Texas Jur., page 1000; Fidelity Union Fire Ins. Co. v. Barnes, Tex.Civ. App., 293 S.W. 279; Home Ins. Co. v.

Flewellen Produce, Tex.Com.App., 247 S. W. 833.

■ Appellant's second point is that, on the undisputed evidence, appellee failed to furnish "proof of loss" within ninety-one days after the fire. On this issue the jury found the following facts: (a) Appellant, "by the act of its agents, servants, and employees" lead appellee to believe that he had done all that was necessary to do in order to comply with its requirements for filing proof of loss; this issue was plead by appellee; (b) Within 91 days after the date of the fire, appellee filed a sworn proof of loss in substantially the form required by the express terms of the policy contract sued on. We give the evidence on these issues: Appellee filed with appellant, under examination a few days after the fire, a sworn statement into which was incorporated a complete inventory taken within the time provided by the terms of the policy, and a complete statement of the sales and reduction of stock made from the date of the inventory to the date of the fire, with copies of the invoices subsequent to the inventories and before the fire. From this inventory appellant was able to determine the amount and value of the merchandise on hand at the time of the fire.

Immediately after the fire, W. J. Ashy informed Mr. Gordon Reily, the insurance agent who wrote the policy, of the loss, and asked his advice as to what steps should be taken or proof made in order to comply with the requirements of the policy to establish the extent of the loss. A few days after the fire, Mr. Fones, an adjuster acting for appellant, called on Mr. Ashy, and Mr. Ashy again expressed to him his desire to cooperate in furnishing all the proof necessary. Mr. W. J. Ashy testified:

"Q. After he came did anybody else come to see you about it? A. The banker told me he got a telephone call Friday, and he said the insurance man is coming to see you Tuesday; and on Tuesday three men and a woman come, and this man was along there and he said—I am going to try you.

"Q. Was Mr. Fones there? A. Yes, Fones was along, but this man had a big statement with him and he said read that; and the banker was busy and I told him to wait until he come; and he come and read the matter up and he said that is the law, go ahead; and that man swore me and put me on the stand and asked me about two and one-half or three hours more questions.

"Q. I understood you to say something about the Gentlemen sitting down—about him going to try you? A. Yes, sir; this man right here (pointing finger).

"Q. The Gentleman you referred to is Mr. Bryan, of the firm of Bryan & Bryan, representing the insurance company in this case? A. Yes, sir; and he had a stenographer.

"Q. Did he take down what you said at that time? A. Absolutely.

"Q. And at that time what was done in regard to giving them the benefit of the inventories and such invoices and other matters you had on your books? A. Yes, sir; he said he would like to get the policy and everything else, and I gave it to him and he take it to Houston with them.

"Q. You gave him a policy and a bunch of other instruments and he took them to Houston? A. Yes, sir.

"Q. You mean these inventories? A. Yes, sir.

"Q. Did you give them to him at that time? A. Yes, sir; he asked me and I let him have them."

Mr. Gordon Reily testified:

"Q. If you will, Mr. Reily, tell us such facts as you can that might give this Jury an idea as to whether or not Mr. Ashy appeared to be willing to do whatever Mr. Fones wanted him to do in regard to producing books and records; just tell us what you saw and what conversation took place in your presence as near as you can? A. He was very anxious to produce any and all records. * * * I know at times— you remember, Mr. Bryan, when they asked him about some more papers and he would jump up and run all over the country and we couldn't keep him in the bank. My opinion would be that he was digging up everything he could find; and some things he thought he had he couldn't find.

"Q. During the various conversations you had with Mr. Ashy in regard to the loss up there did you say anything to Mr. Ashy or did anyone else in your presence that you recall, say anything to him in detail about what was necessary for him to do, or whether or not it would be necessary to do anything in addition to what he had done? A. No, the first trip Mr. Fones made Mr. Ashy asked him, have

you got everything you need, and he said yes, I have everything I think we will need. I will have to make my report to the Company, which is the general course and way an adjuster handles his business. And I looked in the next day or two for the check to come back.

"Q. At the time Mr. Fones and you had the conversation did Mr. Fones examine the books of the Company and such data as Mr. Ashy had and they made that might determine the amount of loss, etc? A. Yes, we added up his sales slip and figured around there to see about how much merchandise he had.

"Q. Mr. Reily, do you remember whether or not either you or Mr. Fonᵣ told Mr. Ashy it wouldn't be necessary for him to do anything else until he was notified further? A. Well, he told me, talking to us together, he said that was all that could be done at the present time. I asked him if there was anything we could do to expedite the payment of this thing and he said we had done all we could do. He said I will just have to make my report to the Company. * * *

"Q. As a matter of fact you know that is in the policy where the assured has ninety days in which to file a sworn proof of loss? You know what that policy says, he had ninety-one days to file a proof of loss. Why didn't you have Mr. Ashy file a Proof of loss? A. If you will refer to one of my letters you will see where I stated that I thought he had. Mr. Fones left the impression with me that everything had been done that needed to be done. * * *

"Q. Did he (Fones) state to you that it would be necessary for Mr. Ashy to do anything in addition to what had been done in order to collect this fire insurance policy. A. I assumed he assured me everything was done that could be done.

"Q. Was that the time Mr. Williford Ashy or someone presented the books and accounts and invoices and inventories and sales books of the Fair Store or Ashy Store? A. The same time."

On the following authorities, the court did not err in refusing to instruct a verdict in appellant's favor on the issue for the failure to furnish proof of loss: Chicago F. & M. Ins. Co. v. Herring, Tex.Civ.App., 54 S.W.2d 236; Occidental Fire Ins. Co. v. Fort Worth Grain & Elevator Co., Tex. Civ.App., 294 S.W. 953, writ refused; Lon-don & Lancashire Ins. Co. v. Higgins et al., Tex.Civ.App., 68 S.W.2d 1056; National Standard Fire Ins. Co. v. Hubbard, Tex.Civ.App., 31 S.W.2d 859; Federal Surety Co. v. Smith, Tex.Com.App., 41 S. W.2d 210; Franklin Fire Ins. Co. v. Britt, Tex.Civ.App., 254 S.W. 215; Firemen's Fund Ins. Co. v. Galloway, Tex.Civ.App., 281 S.W. 283.

■ Appellant's third point is that, on the undisputed evidence, appellee was not the sole and unconditional owner of the insured property. This contention is denied. On this issue, the jury found that the property insured "was owned unconditionally and solely" by appellee. The jury also found that Gordon Reily was appellant's agent who issued the insurance policy, and that at the time he issued the policy he knew that it was owned by appellee. On this point W. J. Ashy, the father of appellee, J. W. Ashy, testified: "The business actually belonged to my boy. I bought it for him. I operated the business for him continuously from the day I bought it up until it was destroyed by fire. During that period of time the business was owned by J. W. Ashy; by my boy, J. W. Ashy. I told Mr. Reily about my boy, J. W. Ashy, I told him his age. I told him his age before he wrote the policy."

Mr. Gordon Reily testified: "At the time I wrote this policy I knew J. W. Ashy; I knew he was a minor son of W. J. (Williford) Ashy. When I wrote the policy I knew that it belonged to J. W. Ashy; that he owned the business or the property insured by the terms of that policy. I also understood that Williford Ashy was the manager of the business."

Without quoting from the charge, it is our conclusion, on the issue of burden of proof, that it is in substantial compliance with the instructions given in Federal Surety Co. v. Smith, Tex.Com.App., 41 S. W. 2d 210.

■ Appellant's last proposition is that appellee's petition did not deny that the loss came "within any of the exception and exclusion clauses contained in the policy." This proposition is overruled. Appellee alleged that the property covered by the policy was "destroyed by fire, and that said fire, and the resultant loss, were not caused by any act of plaintiff, nor was said fire and the resultant loss caused by any act or circumstances described in the aforesaid insurance policy, which would avoid the

liability of defendant for the damage done."

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.